# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kretschmann Farm, LLC, and : 
Donald Kretschmann and : 
Rebecca Kretschmann, husband : 
and wife, : 
               Appellants : 
 : 
        v. : No. 360 C.D. 2015
 : Argued: November 17, 2015
Township of New Sewickley and : 
Board of Supervisors of New : 
Sewickley Township, Beaver : 
County, Pennsylvania : 
 : 
        v. : 
 : 
Cardinal PA Midstream, LLC and : 
PennEnergy Resources, LLC : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE LEAVITT                          FILED: January 7, 2016

      Kretschmann Farm, LLC and Donald and Rebecca Kretschmann, husband and wife (collectively, Landowners), appeal the order of the Court of Common Pleas of Beaver County (trial court) that affirmed the decision of the Board of Supervisors of New Sewickley Township (Township) to allow the construction of a gas compressor station on land adjacent to their organic farm. Landowners contend the Township erred because its written decision and order did

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

not address Landowners' evidence that the proposed compressor station will adversely affect the public health and welfare. They also assert that the trial court erred by denying them the opportunity to present additional evidence in their land use appeal. We affirm.

## Background

On May 1, 2014, Cardinal PA Midstream, LLC (Cardinal) filed a conditional use application with the Township to build a gas compressor station on property located in the Township's "A-1 Agricultural District." Section 6.2 of the Zoning Ordinance[2] lists conditional uses authorized in the A-1 Agricultural District, and one such use is a compressor station, subject to "standards and criteria specified in Subsection 16 herein." ZONING ORDINANCE, art. VI, §6.2; Reproduced Record at 899a (R.R. ___).[3] The Zoning Ordinance defines a "compressor station" as:

> One or more enclosed insulated building, housing compressor units, that are to be designed compatible with other structures in the area and designed and constructed to compress natural gas and/or oil that originates from a gas and/or oil well, or collection of such wells, operating as a midstream facility for delivery of gas and/or to a transmission pipeline, distribution pipeline, processing plant or underground storage field including one or more natural gas and/or oil compressors associated buildings, pipes, valves, tanks and other equipment.

---

[2] ZONING ORDINANCE OF THE TOWNSHIP OF NEW SEWICKLEY, BEAVER COUNTY, PENNSYLVANIA (Zoning Ordinance), as amended by Ordinance No. 194, December 27, 2012.

[3] Ordinance No. 194 was enacted in 2012 and amended the Zoning Ordinance to regulate natural gas drilling and activities. R.R. 897a-910a. Ordinance No. 194 identifies the amendments to the Zoning Ordinance by article and section.

ZONING ORDINANCE, art. II, §301; R.R. 897a-98a. Cardinal's compressor station will consist of two buildings and four compressors on an 11.2-acre pad, which is part of a 46.64-acre parcel about to be acquired by Cardinal.[4] Cardinal's compressor station will prepare natural gas produced by PennEnergy Resources, LLC for market.[5]

On July 2, 2014, the Township scheduled a public hearing on Cardinal's conditional use application. At that hearing, Cardinal presented testimony from Greg Muse of PennEnergy as well as testimony from Cardinal's employees and consultants: Thomas Baskin, Lauren Parker, Reggie Keith, and Brian Hoffheins.

Muse provided a history of PennEnergy operations, which included slides depicting its existing oil and gas sites, from the construction phase to completion.[6] PennEnergy plans to connect four of its natural gas wells to Cardinal's proposed compressor station, which will "gather the gas," *i.e.*, separate the condensate, a type of ultralight oil, from the gas. Cardinal will then transport the condensate to market.

Thomas Baskin, Cardinal's vice-president of construction, testified about Cardinal's operations. He explained that under the joint venture, Cardinal will process PennEnergy's gas at multiple compressor stations in Beaver and Butler Counties, some of which are already operational. Baskin introduced Cardinal's management team and detailed its experience in the natural gas

---

[4] Cardinal has a sales agreement with Cecil Ellen Properties, which owns the 46.64-acre parcel.

[5] PennEnergy was granted permission to intervene by the trial court. Cardinal and PennEnergy have filed a joint brief to this Court.

[6] The PowerPoint slides were photocopied and submitted into evidence.

industry. He testified that the compressor station will incorporate pollution prevention and control measures that will be reviewed and approved by the Pennsylvania Department of Environmental Protection (DEP).

Lauren Parker, a licensed professional engineer, testified that Cardinal's erosion and sediment control plan had been submitted to DEP. In response to the recommendations of the Township's Planning Commission, Cardinal made site plan adjustments. For example, it will undertake landscaping to block the visibility of the compressor station from neighboring landowners and the road.

Reggie Keith, Cardinal's noise consultant, testified that the compressor station will conform to the noise standards in the Township. A muffler will be installed on each compressor, and each compressor building will be insulated. Keith testified that Cardinal is committed to mitigating noise from the compressors.

Brian Hoffheins, Cardinal's traffic consultant, testified about the driveway and traffic. He identified the driveway's proposed location off Teets Road and explained that Cardinal is still reviewing comments from the Township's engineer. He stated that once the compressor station is built, truck traffic will average six trucks per day.

The Township permitted residents in attendance to ask questions. Donald Kretschmann stated that he has operated an organic farm for 40 years and complained that the area has become more industrial over time. Rebecca Kretschmann noted that the stated speed limit of 45 mph on Teets Road is often violated. Further, the road curves close to Cardinal's proposed driveway, which may present a danger. Others in attendance asked questions, principally about

4

traffic and noise. Mr. Kretschmann complained that the focus should not be on noise emitted by the compressors, but upon gas emissions. After posing questions on noise and traffic, the Township scheduled the next hearing date for July 23, 2014.

At the second hearing, Cardinal presented responses to the questions of residents and Township officials. Hoffheins testified that after the first hearing, he met with Township officials to address traffic, and this prompted the submission of updated reports. He also addressed the driveway construction.

Mark Ward, Cardinal's chief operating officer, testified that the compressor station will be state-of-the-art, with equipment installed to control gas emissions. He noted that Cardinal has placed its compressor stations next to farms in the past and without incident. Ward then went through a PowerPoint presentation demonstrating the compressor station's compliance with the Zoning Ordinance.

Christie Wilson, Cardinal's air quality compliance consultant, explained the DEP permitting process. First, DEP will issue a construction permit to allow Cardinal to construct one of its four planned compressor stations. DEP then inspects the constructed station. If it is satisfied that Cardinal has complied with the terms of the construction permit, DEP will issue an operating permit. Thereafter, DEP will do periodic inspections to ensure compliance with the operating permit. In addition, Cardinal must meet or exceed federal air quality standards enforced by the Environmental Protection Agency (EPA).

Richard Weber, the Chairman of PennEnergy, testified that PennEnergy is committed to safety and excellence in its operations. He stated that PennEnergy has signed oil and gas leases with 678 landowners in the Township,

5

representing approximately 71% of the Township's property. Weber opined that the Township stood on the verge of developing its natural gas reserves in an environmentally sound way that will generate significant royalties to the residents for decades.

Township officials then opened the hearing to comments, which both supported and opposed Cardinal's conditional use application.[7] One resident expressed concern about a pipeline PennEnergy wants to place on her land. Another asked about the flares from the wells, asserting that they would cause light pollution. Another commented that a compressor station does not belong in a residential area. Another citizen, a chemical engineer, cited an EPA study showing that a compressor station can generate nitrogen oxide, which can cause lung damage and cancer. She was also concerned about how emissions would impact the adjacent organic farm.

Bob Schmetzer, on behalf of Beaver County Marcellus Awareness Group, testified that the gas industry is bamboozling the public. He claimed that methane released during gas drilling and the diesel fuel fumes produced by trucks in the industry are harmful and cause brain lesions. Schmetzer asserted that the risk can be confirmed by reports on the internet and in books.

Reverend James Hamilton testified that in his travels he has seen the destruction that coal mining caused to western Pennsylvania. He opined that gas drilling will make it worse. He stated that Beaver County's air quality received an

---

[7] At both hearings, the Township swore in, as a group, the persons that wished to comment or ask questions. Some of the witnesses were in favor of Cardinal's conditional use applications. Because the appeal to this Court involves the purported failure of the Township to address the evidence in Landowners' favor, this summary of the evidence omits the comments supportive of Cardinal.

"F" rating by the EPA, and more and more children are developing respiratory problems. Hamilton believes that state government is not doing its job to protect the public health.

Brian Snyder, the Executive Director of the Pennsylvania Association for Sustainable Agriculture, stated that he was attending the hearing on behalf of farmers that might be affected by Cardinal's compressor station. He asked the Township to consider the long-term consequences, explaining that the loss of farmland to the gas industry will adversely impact agricultural production and, ultimately, this nation's ability to feed itself. Snyder noted that consumers are willing to pay a higher price to get the fresh, organic food offered by Landowners, and this is a better use of the land.

Counsel for Landowners requested the Township grant Landowners aggrieved party status, and the Township granted the request. Counsel then called Donald Kretschmann to the stand.

Kretschmann testified that he has been farming in the Township since 1978 and makes a living as a certified organic farmer. His customers tend to eat his produce raw. Kretschmann stated that further study was necessary to ascertain the risk of contaminants getting into his produce through emissions from Cardinal's proposed compressor station.

Maria Kretschmann, Landowners' daughter, also testified. She stated that agriculture is not compatible with gas drilling and that the Township has a duty to promote public health, safety, morals and the general welfare of its citizens. Farms are vital to Pennsylvania's economy and culture. Maria Kretschmann testified that since 2007, DEP has reported 200 cases of water contamination caused by oil and gas development. She explained:

7

> I'm not here to prove to you that there is negative direct cause and effect of oil and gas development on human health.… I'm here to ask you to prove to us that it is safe and that it will not harm our health, our quality of life or our environment.

Notes of Testimony (N.T.) 7/23/14, at 174-75; R.R. 819a-20a. Maria Kretschmann asked the Township to deny the permit.

Counsel for Landowners then offered approximately 200 letters written by Landowners' customers expressing concern about the proximity of the proposed compressor station to Landowners' farm.[8] The letters referred to various studies and newspaper articles. Counsel offered the written submissions into evidence, along with "a large number of the documents that have been referred to me by those individuals." *Id.* at 179; R.R. 824a. Cardinal objected to the letters and documents as hearsay. Counsel argued that they were not being offered to prove that a gas compressor station will have a direct impact on the health of Landowners' customers, but rather

> to establish the reasonable grounds upon which the suspicions of [Landowners'] customers are based [which] can threaten the continuing commercial viability of their farm, regardless of what the underlying science currently can or cannot prove.

*Id.* Cardinal argued that in the absence of expert testimony laying a foundation for harm, the documents were irrelevant and inadmissible. When Counsel for Landowners requested a continuance in order to present expert testimony on harm, the Township's legal counsel suggested that the documents be submitted and, after he reviewed the law, he would advise the Township on whether Landowners'

---

[8] These letters appear to be in response to an e-mail Landowners sent to their customers asking them to contact the Township and express dismay at the prospect of a compressor station being built in close proximity to the farm. R.R. 420a-21a.

8

proffered documents were admissible. Landowners' Counsel agreed with this suggestion and rested.

Cardinal recalled air quality compliance consultant Christie Wilson to respond to Landowners' evidence.[9] She stated that there will not be an open flame flare at the compressor station. Benzene, toluene, ethylbenzene and xylene are compounds that will be condensed from the gas stream and converted to liquid. Only in liquid form will these compounds be transported to a gas plant for processing. Wilson also explained that the compressor engines are equipped with catalytic converters to remove 93% of the formaldehyde emissions, which is a common emission also generated by motor vehicles. She noted that testing and monitoring of the site will be ongoing and that both DEP and the EPA have the authority to enter the property at any time to do an inspection of the compressor station.

Landowners cross-examined Wilson, who agreed that it is technologically impossible to prevent all emissions from leaving the compressor station. It will be fitted with exhaust stacks, and their efficacy has been guaranteed by the equipment manufacturers. Wilson acknowledged that compressor stations have been known to violate air quality standards in the past. When asked whether Marcellus Shale gas contains traces of radon, Wilson replied that she was not familiar with this claim.

---

[9] Cardinal also recalled several other witnesses to reiterate that the project would meet state and federal air quality standards.

**Board of Supervisors' Decision**

Ordinance No. 194, which amended the Zoning Ordinance in 2012, was enacted to authorize and regulate oil and gas operations in the Township. Generally, these operations are permitted by right in the A-1 District; however, compressor stations and processing plants are excluded from the list of uses permitted by right. ZONING ORDINANCE, art. VI, §6.1; R.R. 898a. Rather, compressor stations are allowed as a conditional use in the A-1 District. ZONING ORDINANCE, art. VI, §6.2; R.R. 898a. The Zoning Ordinance sets the following standards and criteria for a compressor station:

> a.　Minimum lot area shall be twenty (20) acres.
>
> b.　Maximum noise level at full operation shall be 60 dba measured at the property boundary line.
>
> c.　A minimum three (3) linear mile separation distance between compressor stations measured from the building pad shall be applicable to this category of use. Multiple compressor station buildings may be located on the same compressor station site.
>
> d.　Access roads to the facility shall be designed at a maximum ten percent (10%) grade and maintained in a stable, mud-free condition.
>
> e.　The operator shall comply with all applicable provisions of Section 14.18 of this Ordinance.

ZONING ORDINANCE art. VI, §6.2; R.R. 899a. The Zoning Ordinance imposes a building height limit of 45 feet and a maximum lot coverage of 50% on compressor stations. ZONING ORDINANCE art. VI, §6.4; R.R. 900a. The Zoning Ordinance sets forth a detailed application that must be submitted to the Planning Commission, the Zoning Officer and the Board of Supervisors. ZONING

10

ORDINANCE, art. XIV, §14.18; R.R. 905a-07a. It also sets forth detailed safety standards that must be satisfied before and after approval of a conditional use. *Id.*

The Township found that Cardinal complied with all of the requirements of the Zoning Ordinance. In its decision approving Cardinal's application, the Township noted that where a proposed conditional use complies with the Zoning Ordinance, a presumption arises that the proposed use is consistent with the general welfare. The burden then shifts to "objectors to rebut the presumption by proving, to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use." Township Decision at 7. The Township noted the objectors must "present sufficient evidence that the use will present a substantial threat to the community." Township Decision at 8. The Township granted the conditional use, subject to 33 specified conditions.[10]

## Trial Court Appeal

Landowners filed a land use appeal. They requested the trial court to take additional evidence to amend the record of the proceeding before the Township. The trial court denied this request. Landowners presented two issues in their land use appeal. First, they argued that the Township's written decision did

---

[10] The conditions require Cardinal to comply with the general standards of the Zoning Ordinance; reconstruct Teets Road pursuant to the recommendations in the management plan; erect weight restriction signs on two area roads; meet with the affected residents to explain the project; secure a $1,000,000 bond in favor of the Township; use escort vehicles on Lowboy type trailers; prohibit overweight vehicles during school bus hours of operation and after sunset; install snow fencing; submit a safety plan; provide all necessary permits; provide the Township with evidence of compliance with the maximum noise level; provide required landscaping; minimize nighttime lighting; and house the compressors in green colored buildings in the style of agricultural buildings in the Township. Township Decision at 8-12.

not address their evidence, in violation of due process. Second, they argued that Ordinance No. 194 was unconstitutional.

The trial court rejected Landowners' appeal. First, the trial court held that the Township is not required to address each item of evidence offered in a hearing. In any case, Landowners presented "concerns," which "do not equate to evidence." Trial Court op. at 4. Second, the trial court held that Landowners did not preserve their challenge to the constitutionality of Ordinance No. 194. Concluding that the record established that the health, safety and well-being of the Township's residents would be protected, the trial court affirmed the Township.

## Commonwealth Court Appeal

On appeal,[11] Landowners raise three issues. First, they claim that the Township abused its discretion because it did not consider their evidence, which prevents meaningful appellate review and denies them due process of law. Second, they claim that Ordinance No. 194 violates their constitutional rights by permitting the construction of a gas compressor station in the A-1 District. Third, they claim the trial court erred by denying their motion to present additional evidence.

---

[11] Where, as here, the trial court did not take additional evidence, our review determines whether the board committed an error of law or abuse of discretion. *Weiser v. Latimore Township*, 960 A.2d 924, 929 n.9 (Pa. Cmwlth. 2008). The question of whether the trial court should have permitted additional evidence is a matter within its sound discretion, subject to the abuse of discretion standard. *Caln Nether Co., L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 498 (Pa. Cmwlth. 2004).

12

**Applicable Law**

The law on conditional uses is well established. "A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). A conditional use involves the use of the land, as opposed to the particular design details of the development. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 (Pa. Cmwlth. 2011). An applicant is entitled to a conditional use as a matter of right, unless it is determined "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009).

The applicant bears the burden of establishing that the proposed conditional use satisfies the criteria in the zoning ordinance. *Id.* The board is the fact-finder, with the responsibility for credibility determinations and the weight to assign the evidence. *Joseph*, 16 A.3d at 1218. If the board is persuaded that the application complies with the zoning ordinance, a presumption arises that "the proposed use is consistent with the general welfare of the community." *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1018 (Pa. Cmwlth. 2002).

The burden then "shifts to objectors to rebut the presumption by proving that there is a high degree of probability the proposed use will adversely affect the welfare of the community in a way not normally expected from the type of use." *Id.* "Mere speculation" of possible harm is not sufficient. *Id.* Pointedly, a "conditional use application *must* be granted unless objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety

13

and welfare." *In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009) (emphasis added).

## Landowners' Evidence

In their first issue, Landowners claim that the Township abused its discretion because its findings of fact do not contain any reference to Landowners' evidence. Accordingly, it cannot be discerned whether the Township properly considered their evidence. This deprived Landowners of due process. In addition, it makes meaningful appellate review impossible. They request a remand.

Cardinal counters that the Pennsylvania Municipalities Planning Code (MPC)[12] does not require the Township to discuss all evidence. Further, the Township's determination contains the findings of fact and conclusions of law necessary to meaningful appellate review. Cardinal argues that Landowners' so-called evidence consisted of no more than open-ended questions and speculation.

For its part, the Township explains that the Township's silence on testimony offered by the Kretschmanns does not mean that it did not consider it. Rather, it means that the Township was not persuaded by their evidence.

Section 908(9) of the MPC sets forth the following requirements for the content of a municipality's written decision in a land use application:

> The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. Conclusions based on any

---

[12]Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

14

> provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.

53 P.S. §10908(9). Landowners contend that the Township's written decision does not meet this standard.

Landowners point out that this Court will vacate and remand where a decision does not contain enough information to "conduct meaningful appellate review." *See, e.g., Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 642 A.2d 541, 544 (Pa. Cmwlth. 1994) (case remanded where commission's factual findings and analysis were insufficient to allow this Court to review its decision); *Stana v. Unemployment Compensation Board of Review*, 791 A.2d 1269, 1271 (Pa. Cmwlth 2002) (failure to make a credibility determination about a claimant's untimely filing required a remand).

The Township's decision does not list the witnesses presented either by Cardinal or by Landowners. Instead, the Township listed the Zoning Ordinance's requirements for a compressor station and then made numerous factual findings to detail Cardinal's compliance with these requests. The Township held that the facility is a permitted use and "[i]f constructed and operated as designed and represented by [Cardinal] the [f]acility does not pose a threat to the general health, safety or welfare of the Township." Township Decision at 7. The Township then considered the "shifting burden of persuasion." Township Decision at 7. Specifically, the Township noted that the objectors had to present evidence sufficient to prove that the compressor station will present a substantial threat to the community in a way that is not normal for this type of use.

It is true that the Township's written decision does not refer to Landowners' testimony or documents, including the hundreds of e-mails

15

expressing concern about the environmental and health impact of Cardinal's compressor station. However, expressions of concern do not constitute probative evidence of harm. At the hearing, Landowners' counsel stated that the e-mails were not being introduced to prove a direct impact on health but to establish the risk of loss of Landowners' customers. Further, Landowners presented no expert reports or testimony to support their challenge to Cardinal's conditional use application.

Landowners point to statements in the record that they believe to prove a high probability that Cardinal's compressor station will adversely affect the public welfare in a way not expected for this type of use. Rebecca Kretschmann expressed concern for her organic farm and referred the Township to studies conducted by Dr. Lenore Resick on the potential impacts of "similar sites" in western Pennsylvania as part of the "Western Pennsylvania Environmental Health Project." N.T. 7/2/14, at 128-129; R.R. 207a-08a. Darlene Parisi-Dunne, who has a Ph.D, stated that a family in Texas had recently been awarded $3 million in damages against Aruba Petroleum for health related issues including, chronic nosebleeds, irregular heartbeats, sores, and breathing difficulties. N.T. 7/23/14, at 90-91; R.R. 735a-36a. Elaine Stiger expressed concern that the increased traffic will adversely impact the rural lifestyle of the community. *Id.* at 95-98; R.R. 740a-43a. Michael Dunne, M.S.W., testified that the location of the facility was inconsistent with the nature of the community and Landowners' organic farm. He opined that the facility will produce dangerous levels of pollution; the long-term health consequences of living near the facility are unknown; and the Township should have required Cardinal to run the compressor station on electric power and not diesel. *Id.* at 100-07; R.R. 745a-52a. Holly Wilson-Jene, a chemical engineer,

16

stated that the typical pollutants from a compressor station include nitrogen oxide, which can impair respiratory health, and benzene, which causes cancer. She was concerned about the proximity of these emissions to an organic farm. She also cited a website listing the health issues afflicting people living in the Marcellus Shale area. *Id.* at 111-17; R.R. 756a-62a. Donald Kretschmann testified that a compressor station should not be located near a farm because emissions will contaminate the produce and the contaminants cannot be washed off. *Id.* at 168-73; R.R. 813a-18a.

The trial court concluded that Landowners' proffered testimony and that of the other objectors did not constitute substantial evidence on which a finding of harm could be based.[13] It explained as follows:

> It is clear to this Court that the Board's failure to discuss [the testimony of Landowners and other objectors] in its written decision does not, in and of itself, equate to a failure of the Board to consider the testimony and arguments presented by the objectors. A detailed reading of 53 P.S. Section 10908(9) reveals no requirement that the Board must address each individual objector, his/her arguments or his/her testimony. *The Board has the authority to judge the weight and credibility of presented testimony, and if they find that testimony lacking credibility or weight to meet their shifting burden of proof, there is, simply stated, no requirement for the Board to discuss it in its Findings of Fact, Conclusions of Law and Decision.* The fact that the [Board] does not mention offered testimony and alleged evidence of the objectors can reasonably be interpreted as the [Board's] conclusion that evidence presented was not compelling and, therefore, did not warrant discussion.

---

[13] On appeal, this Court determines whether the Township committed an error of law or an abuse of discretion. *Zajdel v. Board of Supervisors of Peters Township*, 925 A.2d 215, 218 n.6 (Pa. Cmwlth. 2007). An abuse of discretion is established when findings of fact are not supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

17

> Once Cardinal satisfies the requirements for a conditional use approval, the burden shifts to [the objectors] to demonstrate to the Board that there is a high degree of certainty that the proposed use would result in an adverse impact to the health, safety and welfare of the residents of [the Township]. In this instance, the [objectors] did, in fact, raise numerous concerns about the impact of the proposed compressor station. Concerns, however, do not equate to evidence, and there is nothing in this record that would lead this Court to determine that the Board abused its discretion when it found the presented testimony and arguments not to be persuasive.

Trial Court op. at 3-4 (internal citation omitted) (emphasis added). We agree with the trial court.

Landowners voiced concerns but did not present probative evidence. Accordingly, they did not meet their burden of showing that Cardinal's compressor station would adversely affect the public health, safety and welfare in a way not expected for a usual compressor station. In *Gorsline v. Board of Supervisors of Fairfield Township*, 123 A.3d 1142 (Pa. Cmwlth. 2015), landowners expressed concerns that a proposed natural gas well in a residential zoning district would be detrimental to the health, safety and welfare of their neighborhood. This Court explained that the questions landowners asked at the Board hearing, and their concerns that the well would be harmful, did not constitute probative evidence that the well would be harmful to the health, welfare and safety of the neighborhood. *See also Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Board*, 646 A.2d 717, 723 (Pa. Cmwlth. 1994) (objectors' arguments that proposed quarry would have detrimental effect on community did not constitute substantial evidence that quarry use would affect health and safety of community).

Additionally, the conditions imposed by the Township establish that the concerns raised by Landowners and other objectors were considered. In

18

response to the concern expressed at the hearing about whether construction on Teets Road would include removing a large tree, Condition D.1 requires Cardinal to "use its best efforts to save the large tree." Township Decision at 12. In response to stated concerns about traffic, the Township imposed conditions requiring Cardinal to install traffic signs, use escort vehicles for lowboy type trailers, limit overweight vehicle traffic during school bus hours of operation and at night, and employ traffic control personnel when moving heavy equipment to and from the site. Township Decision at 10-11. In response to concerns about noise, the Township imposed conditions compelling Cardinal to install noise control equipment and demonstrate compliance with the Township's noise standards. Township Decision at 11. In response to stated concerns about emissions, the Township required Cardinal to provide proof of ongoing compliance with applicable air quality laws. Township Decision at 11.[14]

Cardinal's burden was to meet the specific, objective criteria in the Zoning Ordinance. Doing so established a presumption that the use is consistent with the general welfare of the community. Landowners do not contest the

---

[14] In this regard, Landowners note that Christie Wilson, Cardinal's air quality compliance consultant, acknowledged that the compressor station will emit some pollutants and that modeling had not been done to determine where the emissions will migrate. However, the law does not require emission-free activity.

Landowners contend that Wilson agreed that EPA and DEP regulations are not health-based. The Township states that this is not only a mischaracterization of Wilson's testimony, it is a mischaracterization of the missions of the EPA and the DEP. Notably, the EPA's mission statement "is to protect human health and the environment." http://www.epa.gov/aboutepa/our-mission-and-what-we-do. The DEP's mission statement is to "protect Pennsylvania's air, land and water from pollution and to provide for the health and safety of its citizens through a cleaner environment." http://www.dep.pa.gov/Pages/default.aspx.

Board's conclusion that Cardinal met the requirements of the Zoning Ordinance for a compressor station.

We reject Landowners' first claim of error. Their evidence lacked probative value and, thus, did not persuade the Township. In any case, the Township did not ignore the comments of Landowners and other objectors. It responded with the imposition of 33 conditions, many of which relate to specific concerns raised by the objectors. Because Cardinal proved compliance with the Zoning Ordinance, it established that its proposed use was presumptively consistent with the public welfare.

## Violation of U.S. and Pennsylvania Constitutions

In their second issue, Landowners claim that the Township's approval of Cardinal's conditional use infringed upon their rights guaranteed by the Pennsylvania and United States Constitutions. They claim the Township violated Sections 1, 25 and 27 of the Declaration of Rights in the Pennsylvania Constitution, which state:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
>
> ***
>
> To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.
>
> ***
>
> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values

20

of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §§ 1, 25, 27. Landowners also claim a violation of their due process rights under the Fifth Amendment to the United States Constitution.[15] Finally, they claim a violation of their right to equal protection under the Fourteenth Amendment to the United States Constitution, which provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.[16]

---

[15] It provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V (emphasis added).

"Due process principles require an opportunity … to hear evidence adduced by an opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument." *Panzone v. Fayette County Zoning Hearing Board*, 944 A.2d 817, 821 (Pa. Cmwlth. 2008). Landowners do not claim they were prevented in any way from presenting evidence or addressing Cardinal's evidence. Instead, they claim the hearings before the Board were shown to be a "mere formality" based on the Board's failure to acknowledge that Landowners had presented evidence and were not merely airing grievances. We reject Landowners conclusory statement that the hearings were a mere formality and that this somehow equaled a due process violation.

[16] The equal protection clauses of the Pennsylvania Constitution, *i.e*, Article 1, Sections 1 and 26, are analyzed under the same criteria as established for claims brought under the Fourteenth Amendment to the U.S. Constitution. *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000).

In adopting Ordinance No. 194, which amended the Zoning Ordinance with respect to oil and gas activities, the Township made a number of findings, which follow:

> WHEREAS, the extraction of minerals, specifically oil and natural gas, is a land use which exhibits certain characteristics, which if not monitored could potentially have a negative impact on residents and properties in close proximity; and
>
> WHEREAS, the Commonwealth of Pennsylvania through amendments to the Pennsylvania Oil and Gas Act and Floodplain Management Act, known as Act 13 of February 2012, has attempted to regulate activities related to oil and gas extraction; and
>
> WHEREAS, the Pennsylvania Commonwealth Court has ruled portions of Commonwealth Act 13 of February 2012 which provided for the preemption of certain local zoning ordinance standards, unconstitutional; and
>
> WHEREAS, property owners in New Sewickley Township have been approached by extractive industry representatives to enter into agreements for the development of oil and gas resources; and
>
> WHEREAS, the Board of Supervisors through authority granted by the Pennsylvania Municipalities Planning Code have referred the local zoning issues to the Planning Commission for preparation of regulations which will permit the reasonable development of such natural resources while protecting the health, safety and welfare of Township residents[.]

Ordinance No. 194, Introduction; R.R. 897a.[17]  In short, the Township was fully aware that the preemption of local zoning had been declared unconstitutional when it adopted the Zoning Ordinance amendments set forth in Ordinance No. 194.  Its

---

[17] "Act 13" is a reference to Act No. 13 of February 14, 2012, P.L. 87, amending the Pennsylvania Oil and Gas Act, 58 Pa. C.S. §§2301-3504.

22

legislative determinations were not based on the belief that its legislative choices were circumscribed by Act 13.[18]

Landowners contend that Ordinance No. 194 was unconstitutional because it was not tailored to the local conditions within their community. They claim that a compressor station in the A-1 District violates their right to clean air and pure water, noting that Cardinal did not present any empirical evidence assessing the impact of the emissions from the compressor station on the community. Landowners also argue that Ordinance No. 194 contains the same setback distance of 750 feet that was found unconstitutional in *Robinson Township*, 83 A.3d 901.[19]

Cardinal and PennEnergy respond that the Township made a legislative determination that a compressor station is compatible with uses in the A-1 District, subject to setback and acreage requirements, and that Landowners have not raised a proper challenge to Ordinance No. 194. Further, no court has ever held that a compressor station cannot be compatible with other uses in an agricultural district. Cardinal had no obligation to present evidence that the compressor station emissions will satisfy Article I, §27; it was enough to show that the compressor station will satisfy applicable state and federal environmental protection laws. In any case, *Robinson Township* did not invalidate the use of a 750-foot setback where, as here, the Township in its legislative wisdom concluded that it was appropriate.

---

[18] In its brief, the Township notes that in spite of the Pennsylvania Supreme Court's ruling in *Robinson Township v. Commonwealth,* 83 A.3d 901, 915 (Pa. 2013), it chose to retain the standards in Ordinance No. 194 because it believed they were suitable for the community. Township Brief at 24.

[19] Here, the compressor station is set back 2,000 feet from Landowners' property.

The Township argues that there is no evidence in the record that natural gas development is antithetical to agricultural use. Notably, compressor stations are compatible with agricultural use and, in fact, are located in rural counties. Likewise, Landowners presented no evidence that the compressor station will cause a substantial threat to the public health, safety and welfare, which was their burden.

In *Robinson Township*, 83 A.3d 901, the Pennsylvania Supreme Court held that a single, statewide zoning standard for oil and gas operations in every zoning district in the Commonwealth, as specified in Section 3304 of Act 13, 58 Pa. C.S. §3304, violated Article I, Section 27 of the Pennsylvania Constitution (the Environmental Rights Amendment). The Supreme Court concluded that statewide land use standards altered "existing expectations of communities and property owners and substantially diminish[] natural and esthetic values of the local environment[.]" *Id.* at 979. This holding came in Part III of the opinion.

Regarding Section 3304's establishment of a uniform setback for a natural gas facility of 750 feet from the nearest existing building, the Supreme Court held this requirement was incompatible with the express command of the Environmental Rights Amendment because it afforded "minimal statewide protections while disabling local government from mitigating the impact of oil and gas development at a local level." *Id*. at 980. This holding in Part III of *Robinson Township* was joined by a plurality of the justices. Leaving aside the question of the significance of a plurality opinion,[20] *Robinson Township* did not reach, or

---

[20] A plurality opinion "is binding on the parties in that particular case," but it "is not binding precedent." *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 208 (Pa. 2006).

24

indeed even discuss, whether a municipality could choose to adopt a 750-foot setback, as the Township did here. In short, *Robinson Township* did not nullify that provision of Ordinance No. 194.

Further, Landowners' constitutional challenge to Ordinance No. 194 did not follow the procedures for such a challenge set forth in the MPC, which requires that it be submitted to the zoning hearing board or, alternatively, to the governing body along with a request for a curative amendment. Specifically, Section 916.1(a)-(c) of the MPC states:

> (a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:
>
> > (1) to the *zoning hearing board under section 909.1(a)*; or
> >
> > (2) to the *governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1*.
>
> (b) Persons aggrieved by a use or development permitted on the land of another by an ordinance or map, or any provision thereof, who desires to challenge its validity on substantive grounds shall first submit their challenge to the zoning hearing board for a decision thereon under section 909.1(a)(1).
>
> (c) The submissions referred to in subsections (a) and (b) shall be governed by the following:
>
> > (1) In challenges before the zoning hearing board, the challenging party shall make a written request to the board that it hold a hearing on its challenge. The request shall contain the reasons for the challenge. Where the landowner desires to challenge the validity of such ordinance and elects to proceed by curative amendment under section 609.1, his application to the governing body shall

25

contain, in addition to the requirements of the written request hereof, the plans and explanatory materials describing the use or development proposed by the landowner in lieu of the use or development permitted by the challenged ordinance or map. Such plans or other materials shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a permit, so long as they provide reasonable notice of the proposed use or development and a sufficient basis for evaluating the challenged ordinance or map in light thereof. Nothing herein contained shall preclude the landowner from first seeking a final approval before submitting his challenge.

(2) If the submission is made by the landowner to the governing body under subsection (a)(2), the request also shall be accompanied by an amendment or amendments to the ordinance proposed by the landowner to cure the alleged defects therein.

53 P.S. §10916(a)-(c) (emphasis added).[21]

Here, Landowners did not file a curative amendment in the proceeding before the Township. Counsel for Landowners did advise the Township that Landowners intended to file a substantive validity challenge to Ordinance No. 194 with the Zoning Hearing Board. N.T. 7/23/14, at 147; R.R. 792a. As explained by the trial court, Landowners did in fact file an appeal "challeng[ing] the constitutionality of [Ordinance No. 194] before the Township Zoning Hearing Board but subsequently withdrew that challenge." Trial Court PA. R.A.P. 1925(a) op. at 2. The instant land use appeal concerns the Township's

---

[21] Section 916.1 was added by the Act of December 21, 1988, P.L. 1329.

26

decision to grant a conditional use application, not a decision of the Zoning Hearing Board on a substantive validity challenge.[22]

Landowners' challenge to the constitutionality of Ordinance No. 194's amendments to the Zoning Ordinance was not pursued in accordance with the procedures established in the MPC. We reject Landowners' contentions on this assignment of error.

**Motion to Present Additional Evidence**

Landowners sought to expand the record to include transcripts of two public hearings that took place on Ordinance No. 194. Landowners assert that this legislative history will show that the Township did not consider the health, safety and welfare of the community and did not tailor the ordinance to ensure residents' rights to clean air and pure water when considering Ordinance No. 194. Instead, the transcripts reveal that the concern of the Township was payment of oil and gas lease signing bonuses.

The Township counters that Landowners made a substantive validity challenge to Ordinance No. 194 and then withdrew it mid-hearing. Landowners then raised the constitutional challenge in the instant land use appeal. To that end, they sought to introduce legislative history that they could have offered in the hearing on Cardinal's conditional use application but did not. In any case, the

_____

[22] Cardinal established that it complied with all of the requirements set forth in the Zoning Ordinance. As explained above, this created a presumption that "the proposed use is consistent with the general welfare of the community." *H.E. Rohrer*, 808 A.2d at 1018. A "conditional use application *must* be granted unless objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety and welfare." *In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009) (emphasis added).

27

legislative history of Ordinance No. 194 involved much more than the two hearing transcripts Landowners sought to introduce. The Township conducted 13 hearings.

In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, the trial court addressed the denial of Landowners' motion to expand the record. The trial court explained that Landowners are not entitled to supplement the record unless they were refused the opportunity at the Township hearing. Landowners did not meet this threshold requirement. Landowners acknowledged that they withdrew their substantive validity challenge to the constitutionality of Ordinance No. 194. Thus, the trial court rejected their attempt to resurrect this claim.

> Section 1005–A of the MPC provides in relevant part:
>
> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.1 shall not be remanded for further hearings before any body, agency or officer of the municipality.

53 P.S. § 11005–A.[23] In applying Section 1005-A, this Court has held:

> A court of common pleas faces compulsion to hear additional evidence in a zoning case *only* where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded.

*Eastern Consolidation and Distribution Services, Inc. v. Board of Commissioners of Hampden Township*, 701 A.2d 621, 624 (Pa. Cmwlth. 1997) (quoting *In re*

---

[23] Section 1005–A was added by the Act of December 21, 1988, P.L. 1329.

28

*Appeal of Little Britain Township*, 651 A.2d 606, 613 (Pa. Cmwlth. 1994) (emphasis in original)).

Landowners have not complied with Sections 1005 and 916.1 of the MPC. At the hearing before the Township, Landowners' counsel stated that the validity of Ordinance No. 194 was not properly before the Township; rather a substantive validity appeal needed to be heard by the Zoning Hearing Board. N.T. 7/23/14, at 147; R.R. 792a. Counsel stated that he was putting the Township on notice that Landowners would be filing a substantive validity appeal with the Zoning Hearing Board. *Id.*

As explained by the trial court, Landowners filed an appeal "challeng[ing] the constitutionality of [Ordinance No. 194] before the Township Zoning Hearing Board but subsequently withdrew that challenge." Trial Court PA. R.A.P. 1925(a) op. at 2. They decided not to pursue their claim and "[t]hey cannot now resurrect those foregone remedies." *Id.*

The trial court did not abuse its discretion by refusing to expand the record. The party seeking to introduce new evidence must show it was denied the opportunity to be fully heard below or that it offered relevant evidence that was excluded. Landowners make no such claim. In sum, they have failed to establish that the trial court abused its discretion by refusing to consider their challenge to the constitutionality of Ordinance No. 194 or denying their motion to expand the record.

**Conclusion**

Landowners have failed to establish that the Township erred in its decision to grant a conditional use permit or that the trial court abused its

discretion by refusing to permit expansion of the record.  Accordingly, we affirm the trial court.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kretschmann Farm, LLC, and                     :
Donald Kretschmann and                         :
Rebecca Kretschmann, husband                   :
and wife,                                      :
               Appellants    :
                  :
            v.              :    No. 360 C.D. 2015
                  :
Township of New Sewickley and                  :
Board of Supervisors of New                    :
Sewickley Township, Beaver                     :
County, Pennsylvania                           :
                  :
            v.              :
                  :
Cardinal PA Midstream, LLC and                 :
PennEnergy Resources, LLC                      :

# **O R D E R**

AND NOW, this 7th day of January, 2016, the Order of the Court of Common Pleas of Beaver County, dated February 11, 2015, in the above-captioned matter is AFFIRMED.

                                  _____

                                  MARY HANNAH LEAVITT, Judge