# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edgemark Littleton, LLC and Cheswick    :
Shopping Center, LLC,    :
                     Appellants    :
    :
         v.    : No. 602 C.D. 2019
    : ARGUED: October 4, 2019
Cheswick Borough Council and Cheswick    :
Borough Zoning Hearing Board,    :
and SimonCRE Carp LLC    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**<u>OPINION NOT REPORTED</u>**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: May 8, 2020**


      Edgemark Littleton, LLC, and Cheswick Shopping Center, LLC (collectively, Neighboring Landowners), appeal the decision of the Court of Common Pleas of Allegheny County affirming the decision of the Cheswick Borough Council granting final approval to the amended land development plan filed by SimonCRE Carp LLC (Developer) for the building of a proposed O'Reilly Auto Parts store and the decision of the Cheswick Borough Zoning Hearing Board that a parking variance was not needed for the plan to proceed with thirty parking spaces. Neighboring Landowners assert that the land development application did not meet the requirements of the Cheswick Borough Zoning Ordinance and

procedurally did not comply with the Cheswick Borough Subdivision and Land Development Ordinance (SALDO).[1]

Developer submitted its original land development plan to the Cheswick Borough Planning Commission in December 2017. (Reproduced Record "R.R." at 1-13a). The original plan, as well as the amended plan, depicted the demolition of the previous structure on the premises and the construction of a 7,200 square-foot rectangular building on the property to house the auto parts store. The parcel on which Developer wishes to build the auto parts store is .59 acres in size and located at 1112 Pittsburgh Street, Cheswick, in the Community Business District. Pittsburgh Street is a two-way street running east and west (a single lane in each direction with a turning lane in the middle). (R.R. at 181a). The property is on the south side of Pittsburgh Street. Moving eastward past the property on the south side of Pittsburgh Street are a property housing a car wash, and a Rite Aid drug store on a parcel owned by Edgemark, and a property comprising the Cheswick Shopping Center. There is a stop light at the intersection by the entrance to the Rite Aid store.

Existing access to the parcel by a curb cutout on Pittsburgh Street would be eliminated to create more room for parking on the north face of the property. Two rows of parking spaces would be in front of the auto parts store and one row in the rear, for a total of thirty parking spaces. Access for both customers' vehicles and delivery vehicles, including truck tractor trailers, would be by an entrance shared with the car wash to the east. Between the east wall of the auto parts store and the

---

[1] A copy of the SALDO was not included in the record. However, a PDF file of the SALDO is maintained online by the Commonwealth of Pennsylvania's Governor's Center for Local Government Services eLibrary at http://elibrary.pacounties.org/Documents/Allegheny_County/55;%20Cheswick%20Borough/Cheswick%20SLDO.pdf (last visited on May 7, 2020).

2

property line adjoining the car wash would be a driveway. There would be no barriers between the property, the car wash property, and the Rite Aid property.

Not represented in either the original plan or the amended plan, but testified to by witnesses, is an easement or access agreement allowing customer and delivery vehicles to enter the property through a shared entrance from Pittsburgh Street on the car wash property and cross over to the driveway to the east of the auto parts store and the parking spaces.

After a public meeting in February 2018, the Planning Commission indicated by memorandum to the Borough Council that it had the following issues with the original plan: (1) agreements for access to the property needed to be addressed; (2) a variance allowing only thirty parking spaces, instead of the thirty-six which would be required under the Zoning Ordinance for a 7,200 square-foot retail building, needed to be addressed; and (3) the size of the access area from Pittsburgh Street needed to be increased to allow an eastbound tractor trailer truck to enter the property with ease. (R.R. at 62a-63a). However, despite these issues, "[t]he Planning Commission [was] basically in agreement with this project, but did not give [its] final approval waiting on the outcome of these issues." (R.R. at 63a).

In February 2018, Developer applied for a variance to permit the original plan to proceed with thirty parking spaces. (R.R. at 14a). While the variance application was pending, the Borough Council approved the original plan subject to the approval of the variance and meeting the requirements of the Pennsylvania Municipalities Planning Code (MPC).[2] (R.R. at 153a).

At an April 2018 meeting of the Zoning Board, a hearing was conducted concerning the requested variance. (R.R. at 15a-60a). Neighboring Landowners

_____

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

3

challenged several aspects of the proposed design, which are the subject of this appeal. At the conclusion of the public hearing, the record was held open to give Developer an opportunity to supplement the record with respect to the issue of truck turning. (R.R. at 44a-45a). Developer submitted a truck turning template depicting the routes tractor trailer trucks approaching from the west and east would take to access the auto parts store. (R.R. at 181a).

Prior to any decision on the February 2018 variance request, Developer provided to Cheswick Borough a drawing depicting the interior layout of the auto parts store. (R.R. at 160a, 182a). The drawing depicts a portion of the interior as constituting a "Parts Area 'C'" (Parts Area C) which a notation indicates is "storage and loading and is exempt from required parking calculation" totaling 1,500 square feet. (R.R. at 160a). The Borough Manager and Borough Engineer met with the Zoning Officer and determined that Parts Area C was for storage and loading use and could be exempt from the required parking calculation under the Zoning Ordinance. A letter from the Zoning Officer to Developer's engineer stated that only twenty-nine parking spaces would be required for the remaining 5,700 square feet of floor space, meaning that a variance would not be needed for the project to proceed with the proposed thirty parking spaces. (R.R. at 158a-159a). Thereafter, in July 2018, Developer submitted the amended plan (R.R. at 70a) and withdrew its application for a variance (R.R. at 60a).

Through a Right-to-Know Law[3] request, Neighboring Landowners obtained the documents which led to the withdrawal of Developer's parking variance request. Thereafter, Neighboring Landowners filed with the Zoning Board an appeal of the determination of the Zoning Officer that a parking variance was not needed.

_____

[3] Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 - 67.3104.

(R.R. at 194a-218a). The Zoning Board conducted a public hearing on September 26, 2018. (R.R. at 149a-83a). At the conclusion of the hearing, a vote was taken to sustain the interpretation of the Zoning Officer and a decision was issued to the effect that no parking variance was needed. (R.R. at 183a). Several months later, the Zoning Board issued findings of fact and conclusions of law in support of its decision. (R.R. at 184a-88a).

The Planning Commission reviewed and recommended approval of the amended plan on October 2, 2018. (R.R. at 189a-90a, 193a). On October 16, 2018, the Borough Council voted to approve the amended plan, without imposing any conditions. (R.R. at 191a-92a).

Neighboring Landowners filed appeals with the trial court from the decision of the Zoning Board and from the decision of the Borough Council approving the amended plan. At a status conference held by the trial court in November 2018, Neighboring Landowners learned that the Borough Council had notified Developer in writing of the official approval of the amended plan on October 30. (R.R. at 193a). Neighboring Landowners filed an amended notice of appeal to the trial court from the written approval. Developer intervened in both appeals.

On April 24, 2019, the trial court issued its opinion and order holding that the amended plan complied with the SALDO and Zoning Ordinance and affirming the Zoning Board's decision and the Borough Council's approval of the amended plan. Neighboring Landowners then filed the instant appeal.

On appeal,[4] Neighboring Landowners raise the following issues (rephrased slightly) with respect to the plan approval:

_____

[4] Where the trial court takes no additional evidence, our review in a land development or zoning appeal is limited to determining whether the local governing body committed an error of law or the findings of fact are not supported by substantial evidence in the record. Substantial

5

(I) Was it an abuse of discretion and error of law for the trial court to determine that the land development plans complied with the off-street loading space requirements in the Zoning Ordinance?

(II) Was it an abuse of discretion and error of law for the trial court to determine that the land development plans complied with the access requirements in the Zoning Ordinance?

(III) Was it an abuse of discretion and error of law for the trial court to determine that the land development plans comply with the SALDO's plan submission and approval requirements?

(Neighboring Landowners' Br. at 4).

---

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

We note that Developer argues that Neighboring Landowners' appeal of the Borough Council's decision to the trial court was untimely because the Borough Council issued its approval of the amended plan on October 30, 2018 and Neighboring Landowners' amended appeal was not filed until December 18, 2018—more than thirty days later. However, the Borough Council's letter containing the approval is dated October 30, 2018, but does not contain the mailing date or the date the appeal period begins. If notice of mailing is not provided, the appeal period commences on the date of actual notice. *Schmader v. Cranberry Twp. Bd. of Supervisors*, 67 A.3d 881, 884 (Pa. 2013). Here, Developer's counsel informed Neighboring Landowners of the amended plan's approval at a status conference held by the trial court on November 19, 2018 and emailed Neighboring Landowners' counsel a copy of the Borough Council's decision later that day. The filing date of the amended appeal, December 18, 2018, was within thirty days of Neighboring Landowners' actual notice of the Borough Council's approval of the amended plan, and was thus timely.

We also note that the Borough Council argues that the appeal of the land use decision was not ripe for appeal because at the time of the filing of the initial appeal, on October 24, 2018, the Borough Council had not issued a written decision on the approval of the development plan. This argument ignores the fact that upon receiving actual notice of the written decision on the amended plan, Neighboring Landowners filed their amended appeal addressing the written decision, curing any issue as to whether the appeal, as originally filed, was ripe. (R.R. 235a-41a).

6

Neighboring Landowners also raise the following issue with respect to the Zoning Board Appeal:

> Was it an abuse of discretion and error of law to hold that a variance was not required from the parking requirements of the Zoning Ordinance?

(*Id.*)

## Compliance with the SALDO

Turning first to the procedural issue raised by Neighboring Landowners, it is asserted that Developer did not comply with the SALDO. Section 141-4 of the SALDO provides for a two-step land development process that requires the submission and approval of a preliminary plan and a final plan, SALDO § 141-4.B-C, which did not occur.

Neighboring Landowners point to *Tuscarora Forests, Inc. v. Fermanagh Board of Supervisors*, 471 A.2d 134 (Pa. Cmwlth. 1984), for the proposition that requiring the submission of both preliminary and final plans is not a mere technical filing formality, but a procedure that must be followed for plan approval. In *Tuscarora Forests* we stated:

> In the instant case, requiring submission of both the preliminary and final plans cannot be classified as "technical filing formalities." Even if it could be so classified, the Board here *has done nothing which would have led appellant to believe it would be relieved of the obligation to file both plans*.

*Id.* at 136-37 (emphasis added).

This case differs in that the Planning Commission and Borough Council did relieve Developer of this obligation by approving the land development plan even though Developer did not follow the bifurcated process. *See Whitehall Manor,*

7

*Inc. v. Planning Comm'n of City of Allentown*, 79 A.3d 720, 735-36 (Pa. Cmwlth. 2013) (the provisions of a SALDO may be relaxed or waived by a municipality). In this case, the Borough Council did not demand strict compliance with the SALDO and waived any issue of noncompliance by approving the amended plan.

**Compliance with Off-Street Loading Requirements**

Neighboring Landowners argue that the amended plan does not comply with the off-street loading space requirements of the Zoning Ordinance. Section 158-15.E of the Zoning Ordinance provides that "all structures and uses which require the receipt or distribution of materials or products by tractor trailer trucks or similar vehicles shall provide accessory off-street loading spaces, as required by this chapter." Zoning Ordinance Section 158-27.C provides, in relevant part, that retail stores require one berth "for every 5,000 square feet up to a maximum of two stalls . . . ." Zoning Ordinance Section 158-27.B sets forth the location, area, and access requirements for off-street loading spaces. The off-street loading space(s) must be located so that "no portion of the vehicle shall project into any traffic lane." Zoning Ordinance § 158-27.B(1). The area of each off-street loading space must be "10 feet in width and at least 50 feet in length, exclusive of aisle and maneuvering space." Zoning Ordinance § 158-27.B(2). Access to the off-street loading spaces must be designated "with appropriate means of vehicular access to a street, highway or alley in a manner which will least interfere with traffic movement." Zoning Ordinance § 158-27.B(3).

Neighboring Landowners argue that the land development plan is deficient in that it does not show an off-street loading space, arguing that two are required based upon the building's 7,200 square-foot size. They also argue that the space Developer contends is the loading space on the east side of the auto parts store

8

does not meet Zoning Ordinance access requirements in that it projects into "a traffic lane" (i.e., the driveway on the east side of the store, which would be used for access to the rear parking spaces) in violation of Zoning Ordinance Section 158-27.B(1); does not comply with the width and length requirements for a loading space set forth in Zoning Ordinance Section 158-27.B(2); and is not designated with appropriate access as mandated by Section 158-27.B(3).

Developer contends that the plan itself shows a loading space[5] (singular) (*see* Developer's Br. at 23) and that other evidence and testimony presented establish the presence of a loading space.[6]

---

[5] It is not clear from our review to what drawing in the land development plan Developer is referring as evidencing compliance with the loading space requirement. (Developer's Br. at 23 citing R.R. at 172a).

[6] Developer argues that the presence of a loading space is supported by testimony provided by the Zoning Officer, the Borough Engineer, and the district manager for O'Reilly Auto Parts, who stated that Developer's plan provides for a loading space twenty-two feet in width and a loading dock where the smaller trucks used by O'Reilly Auto Parts would have enough access to pull up and unload the retail goods into the store. (R.R. at 99a-100a, 121a-23a, and 137a).

Only two "man doors" are depicted on the east side of the building in the original and amended plans. (R.R. at 172a). O'Reilly Auto Parts' district manager testified that the "man doors" would be used by drivers unloading to gain entrance to the building to disable security alarms prior to opening an overhead door. It should be noted that the "Interior Finish Plan" provided to the Borough Manager to support the contention that no parking variance was needed depicts a large entrance on the east side of the southeast corner of the building that is not depicted on the land development plan. (R.R. at 160a). The page of the land development plan cited as demonstrating a loading dock contains a notation "CONC. FILLED 4'0" STEEL BOLLARD (TYP OF 5)" by the area of the building where the Interior Finish Plan shows the large entrance. (R.R. at 172a). The bollards themselves are depicted in a group of three beside and parallel to the area where the large entrance is depicted on the Interior Finish Plan (R.R. at 160a) and the more southern man door is shown in both the land development plans and Interior Finish Plan (R.R. at 160a and 172a); the other two bollards are shown beside and parallel to the other man door (R.R. at 160a and 172a). The Truck Turning Template submitted by Developer, although not specifically showing a loading dock, does show that truck tractor trailers will back up parallel to the opening depicted on the east

9

While the disagreement as to whether one or two off-street loading space(s) is/are required can easily be resolved in Developer's favor, as there is not a second 5,000 square feet in the proposed structure under any interpretation of the amended plan, the decisions of the tribunals below are otherwise insufficient to permit appellate review.

Although the trial court concluded that "Developer's plan provides this off-street loading space . . . ,"[7] there are no supporting findings as to where and what in the plans and supporting documents comprises the loading space that demonstrates compliance with the Zoning Ordinance. Because the Borough Council approved the plan, it was not obliged to explain its decision or issue findings of fact and conclusions of law. *See Broujos v. Carlisle Borough Council*, 685 A.2d 620, 623 (Pa. Cmwlth. 1996); Section 508(2) of the MPC, 53 P.S. § 10508(2) ["When the application is *not approved* . . . the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon." (emphasis added)]. In the case of an appeal from a governing body decision that does not include findings of fact, the power to find facts and, if necessary, supplement the record with additional evidence, lies with the trial court. Section 1005-A of the MPC, 53 P.S. § 11005-A.[8] Thus, we will vacate the order of the trial court and

---

side of the southeast corner of the building where the opening is depicted on the Interior Finish Plan. (R.R. at 181a).

[7] (Trial court Op. at 5.)

[8] Added by the Act of December 21, 1988, P.L. 1329. Section 1005-A of the MPC provides as follows:

remand with the direction that the trial court make findings of fact as to the location and dimensions of any off-street loading space that conforms with the requirements of Section 158-27 of the Zoning Ordinance.

**Compliance with Parking Requirements**

Neighboring Landowners argue that the Zoning Board erred in determining that a variance was not required for the project to proceed with only thirty parking spaces, rather than the thirty-six that it was initially believed would be required for 7,200 square feet of gross floor area.

Off-street parking in the C-1 Community Business District, in which the property is located, must meet the requirements set forth in Zoning Ordinance Sections 158-26 and 158-27. Zoning Ordinance § 158-15.E. Retail or service commercial uses require one parking space per 200 square feet of gross floor area. Zoning Ordinance § 158-26.C. Included in the calculation of gross floor area is "floor space devoted to the principal use of the premises, including accessory storage areas located within selling or working space, such as counters, racks or closets; . . . and floor area devoted to the production or processing of goods or to business or

---

> If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review *and* the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact *or* if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, *if any*.

53 P.S. § 11005-A (emphasis added). In this case, because the Borough Council, as governing body, approved the amended plan and was thus not required to make findings of fact or conclusions of law under Section 508(2) of the MPC, 53 P.S. § 10508(2), it is appropriate for the trial court to do so, taking additional evidence if necessary.

11

professional offices." Zoning Ordinance § 158-7 (relating to definitions). Excluded from the calculation of gross floor area is "space devoted primarily to storage purpose, except as noted above, . . . or loading facilities, including aisles, ramps and maneuvering areas." *Id.*

Neighboring Landowners argue that portions of Parts Area C are not excludible—specifically, the office, the lathe area, and the workbench area depicted as being within Parts Area C on the drawing of the interior space submitted by Developer's engineer. Neighboring Landowners contend that the office, which will be used by the general manager, is a "business or professional office" and the lathe and workbench areas are "working space." Neighboring Landowners again note that there is no loading space depicted on the floor plan or land development plan. Neighboring Landowners further note that (i) there will be no walls separating Parts Area C from other areas; (ii) employees will be able to use the "man doors" in Parts Area C; (iii) employees will use areas in Parts Area C to break down deliveries; (iv) the lathe and workbench areas will be located in Parts Area C; and (v) the office will be located in Parts Area C. Additionally, customers would enter Parts Area C to use the restroom.

Developer and the Zoning Board rely upon the proposition that the Zoning Board's interpretation of its own zoning ordinance is entitled to great weight and deference. Additionally, Developer and the Zoning Board note that the Zoning Board is the sole judge of credibility of witnesses and the weight afforded their testimony. *Tri-County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 518 (Pa. Cmwlth. 2014). Developer and the Zoning Board argue that the Zoning Officer's determination is supported by the testimony of the Borough Engineer and O'Reilly Auto Parts' district manager. The Borough Engineer testified that he, the

12

Zoning Officer, and the Borough Manager identified Parts Area C as primarily a storage area based upon the Borough Engineer's conversations with Developer and the Borough Engineer's existing knowledge of how auto parts stores operate and are laid out. O'Reilly Auto Parts' district manager testified that Parts Area C would be devoted primarily to storage purposes.

With respect to the majority of Parts Area C, we defer to the discretion of the Zoning Board in interpreting the ordinance it administers. The question of whether Parts Area C will be "primarily" used as storage and loading space does not require that it will never have other uses in the course of running the business. Incidental use of portions of Parts Area C for other purposes does not defeat the finding that the space will be primarily used for storage and loading.

However, it is clear that a discrete portion of the area characterized as Parts Area C will be used as a business office. Testimony presented before the Zoning Board indicated that the office would be used for general manager activities, such as counting money and paperwork. (R.R. at 115a, 135a, 141a). The definition of gross floor area in the Ordinance specifically provides that such space is included in the calculation. As the Zoning Officer, Zoning Board, and trial court dealt with the question of the use of Parts Area C without differentiating and calculating the space that will be occupied by the office, we lack the requisite findings of fact to determine whether the gross floor area of the proposed retail business, including the office but excluding the remainder of Parts Area C, is sufficiently accommodated by thirty parking spaces. Thus, we remand to the trial court to take evidence and make findings of fact allowing a determination of the correct quantity of gross floor area.

13

## Compliance with Access Requirements

Neighboring Landowners contend that the plan does not comply with the access requirements of Sections 158-26 and 158-27 of the Zoning Ordinance. Zoning Ordinance Section 158-26.B(4)(2) provides for access to off-street parking spaces and requires that "[a]ll accessways shall be designed so as to provide safe exit and entrance from the public street, in accordance with applicable borough standards or [Pennsylvania Department of Transportation] specifications." Zoning Ordinance §158-26-B(4)(2). Zoning Ordinance Section 158-27.B(3), which provides for off-street loading, requires that "[e]ach required off-street loading space shall be designated with appropriate means of vehicular access to a street, highway or alley in a manner which will least interfere with traffic movement." Zoning Ordinance §158-27.B(3). The terms "loading space, off street" and "maneuvering space" are defined as follows:

> Loading Space. Off-Street - Space conveniently located, accessible and properly designed for the temporary use by vehicles making bulk pickups or deliveries of merchandise or materials.
>
> Maneuvering Space - A portion of an off-street loading area set aside so that trucks may enter and leave said area moving in a forward direction.

Zoning Ordinance §158-7.

Neighboring Landowners further contend that the land development plan is deficient in the following respects: that there is no executed agreement that grants access to the car wash property to allow access to Pittsburgh Street; that the lack of direct access to Pittsburgh Street will result in vehicles crossing over the car wash property to the traffic signal by the Rite Aid; that the truck turning template shows that tractor trailer trucks approaching from the west will have to cross into

14

oncoming traffic to turn right to access the shared entrance; that trucks approaching from the east will have to begin turning well before the center turn lane; and that to back into the off-street loading space, trucks will need to cross into the parking area in front of the building.

Developer responds that the truck turning template shows appropriate access for delivery trucks. Developer also notes that the issue of truck access was reviewed by the Borough Engineer, who determined that the proposed access was appropriate based on the truck turning template and the fact that deliveries would occur between midnight and four in the morning. Developer argues that the testimony of the O'Reilly Auto Parts' district manager supports that of the Borough Engineer regarding the time of deliveries and lack of interferences with parking and other vehicular traffic. Developer argues that access reflected in the truck turning template and vehicular traffic in general is predicated on obtaining the easement, and that it has obtained a written agreement for such an easement. Developer argues that delivery trucks will not impinge upon customer parking because deliveries would take place only at night. Developer points to an item in the notes of the Planning Commission that a written agreement was "formulated" for access to the car wash property that was to be "signed and completed once the ownership of the auto parts property is finalized." (R.R. at 189a).

There is nothing in the Zoning Ordinance that requires "direct" access to a public street. Further, there is nothing in the Zoning Ordinance requiring an applicant to demonstrate that it has executed an agreement to acquire rights in property that is part of the "designated" means of vehicular access. Finally, it is not required that an applicant prove that neighbors' land will not be affected by traffic issues. It is only required that each off-street loading space shall be "designated"

15

with "appropriate means of vehicular access to a street, highway or alley in a manner which will least interfere with traffic movement," Zoning Ordinance Section 158-27.B(3), and that accessways for other vehicles "must be designed so as to provide safe exit and entrance from the public street," Zoning Ordinance Section 158-26-B(4)(2).

> The Planning Commission voted to approve the project because
>
> Donald Graham [Lawyer for O'Reilly Auto Parts] informed us that a written agreement ha[d] been formulated for the car wash (eastern side) that is agreeable to both parties involved. This agreement is to be signed and completed once the ownership of the auto parts property is finalized. . . .

(R.R. at 189a).

The trial court found that the amended plan provides "appropriate means of vehicular access to the street"; that the "[truck turning template] evidenced appropriate access for O'Reilly delivery trucks"; that the "Borough [E]ngineer reviewed the delivery truck access and determined that it was appropriate and also noted that deliveries would occur between 12:00 a.m. and 4:00 a.m. only"; that "given the designated delivery times, there would be no interference with parking and other vehicular traffic"; and that "the record reflects that Developer obtained an easement from the adjacent property owner." (Trial Court's Op. at 5). We view the formalization of the easement agreement to be an implicit condition of the plan approval, and find the agreement in effect to be sufficient for approval of the amended plan subject to this condition.

We are mindful that this Court should exercise deference when reviewing a governing body's interpretation of the ordinances it enacts and applies. *In re Provco Pinegood Sumneytown, LLC*, 216 A.3d 512, 517–18 (Pa. Cmwlth.

16

2019); *Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009). Based on the above, we find no ground to disturb the decision of the trial court with respect to access requirements.

**Conclusion**

In accordance with the above discussion, we affirm with respect to vehicular access. However, with respect to the questions of whether off-street loading is provided and whether the thirty planned parking spaces are sufficient for the gross floor area when the business office square footage is deducted from Parts Area C, we vacate the decision of the trial court and remand to the trial court for additional evidence and findings of fact.

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edgemark Littleton, LLC and Cheswick : <br>
Shopping Center, LLC, : <br>
               Appellants : <br>
                : <br>
          v. : No. 602 C.D. 2019 <br>
                : <br>
Cheswick Borough Council and Cheswick : <br>
Borough Zoning Hearing Board, : <br>
and SimonCRE Carp LLC : <br>

# O R D E R

AND NOW, this 8th day of May, 2020, the order of the Court of Common Pleas of Allegheny County is AFFIRMED IN PART and VACATED IN PART. The matter is REMANDED for further proceedings in accordance with the foregoing opinion.

        Jurisdiction is relinquished.

_____ <br>
**BONNIE BRIGANCE LEADBETTER,** <br>
Senior Judge