**H.E. ROHRER, INC. t/a Bailey Coach, Inc., Appellant,**

v.

**ZONING HEARING BOARD OF JACKSON TOWNSHIP AND JACKSON TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2002.
Decided Oct. 18, 2002.

Larry C. Heim, York, for appellant.

David A. Jones, II, York, for appellees.

BEFORE: SIMPSON, J., LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

H.E. Rohrer, Inc. t/a Bailey Coach, Inc. (Applicant) appeals an order of the Court of Common Pleas of York County (trial court) affirming the decision of the Zoning Hearing Board of Jackson Township

(Board) denying its special exception request to permit a cleaning and service station for its bus company. We reverse.

Applicant is a private corporation that provides common carrier bus service and holds a certificate of public convenience issued by the Pennsylvania Public Utility Commission. Applicant owns 12.73 acres in Jackson Township (Subject Property), which is zoned Agricultural. Applicant proposes a building with a wash bay for buses, an attached structure for office and storage space and a parking area. Applicant seeks to use the Subject Property to wash and clean the interiors and exteriors of its two buses. No mechanical services will be provided at the facility, nor will it be used as a passenger terminal. Bus traffic would occur primarily between 6:00 a.m. and 6:00 p.m., with buses being cleaned overnight. Bus drivers and employees would park their vehicles in the parking area during the day.

Properties to the east of the Subject Property are residential, and properties to the west are a mixture of commercial and residential. Spring Grove High School is located directly north of the Subject Property.

Pursuant to Section 304(C)(18) of the Jackson Township Zoning Ordinance (Ordinance), Applicant applied to the Board for a special exception to construct a "public utility building with service structure bus terminal facility." Reproduced Record (R.R.) 64a–65a. Thereafter, the Jackson Township Planning Commission recommended approval of the request.

After two hearings the Board rejected Applicant's request, concluding the proposed use is not a "regulated public utility." The Board determined Applicant's proposal is like an automobile garage or an automobile washing facility, neither of which is permitted in an Agricultural Zone.

Applicant appealed to the trial court. The trial court, without hearing additional evidence, determined the proposed facility fell within the Ordinance's undefined, general classification of a "public utility building or service structure." However, it also held the facility was more akin to an "automobile washing facility," and denied the special exception request. Relying on *AWACS, Inc. v. Warwick Township Zoning Hearing Bd.*, 656 A.2d 608 (Pa.Cmwlth.1995), the trial court concluded that, because the proposed use fits two classifications, the more specific of the two must control. Applicant now appeals to this Court.[1]

Applicant contends the Board erred by classifying its proposed facility as an "automobile washing facility" or an "automobile garage." Applicant further asserts its proposed facility satisfies the undefined phrase "public utility building or service structure" and, as such, its special exception request should be granted. We agree.

Whether a proposed use falls within a given categorization contained in a zoning ordinance is a question of law for this Court. *Rabenold v. Zoning Hearing Bd. of Palmerton Township*, 777 A.2d 1257 (Pa.Cmwlth.2001). In considering this issue, we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land. *Id.* Moreover, undefined terms are given their plain meaning and *any doubt is resolved in favor of the landowner and the least restrictive use*

---

1. Where, as here, no additional evidence has been presented since the Board's decision, our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Greaton Properties, Inc. v. Lower Merion Township.*, 796 A.2d 1038 (Pa.Cmwlth.2002).

*of the land. Kissell v. Ferguson Township Zoning Hearing Bd.,* 729 A.2d 194 (Pa. Cmwlth.1999) (emphasis added). To define an undefined term, we may consult definitions found in statutes, regulations or the dictionary for assistance. *Manor Healthcare v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). A given phrase must be interpreted in context and read together with the entire ordinance. *Borough of Pleasant Hills v. Zoning Bd. of Adjustment of the Borough of Pleasant Hills,* 669 A.2d 428 (Pa.Cmwlth.1995).

█ Here, the Ordinance permits a "public utility building or service structure" by special exception, but does not define the phrase. The Ordinance defines the term "building" as "any structure on a lot having a roof supported by columns or walls and intended for the shelter, housing, enclosure of . . . property. . . ." Section 203 of the Ordinance. It defines a "structure" as "any manmade object having an ascertainable stationary location on or in land. . . ." *Id.*

█ The Ordinance is silent as to the meaning of the term "public utility." The Public Utility Code defines that term, in pertinent part, as "[a]ny . . . corporations . . . owning or operating in this Commonwealth equipment or facilities for: (iii)[t]ransporting passengers or property as a common carrier." 66 Pa.C.S. § 102. Where, as here, an ordinance permits a use for "public utility purposes" and provides no definition, that phrase shall be understood to mean:

> any business activity regulated by a government agency in which the business is required by law to: 1) serve all members of the public upon reasonable request; 2) charge just and reasonable rates subject to review by a regulatory body; 3) file tariffs specifying all of its charges; and 4) modify or discontinue

its service only with the approval of the regulatory agency.

*Crown Communications v. Zoning Hearing Bd. of the Borough of Glenfield,* 550 Pa. 266, 274–75, 705 A.2d 427, 431–32 (1997).

It is undisputed that Applicant's proposed use satisfies the plain meaning of the phrase "public utility building or service structure." The Board, however, opted for a more restrictive approach. Despite its recognition that the proposed use could qualify as a "public utility building or service structure," the Board sought a more specific classification. It invoked the doctrine of statutory construction that where two provisions exist, one general and one specific, the more specific of the two controls.

Specifically, the Board classified Applicant's proposed use as an "automobile washing facility" or an "automobile garage." The Ordinance defines an "automobile washing facility" as "a building designed and used primarily for the washing and polishing of automobiles and which may provide accessory services related to washing and polishing." Section 203 of the Ordinance. An "automobile garage" is defined as "a building designed on a lot and used primarily for mechanical and/or body shop repairs, storage, rental, servicing, or supplying of gasoline or oil to automobiles, trucks and other similar motor vehicles." *Id.* Because these uses are only permitted in commercial zones, the Board denied the request. Section 305(C)(3),(4) of the Ordinance. An examination of the Ordinance in its entirety reveals that the Board erred.

While under some circumstances it may be appropriate to follow a "more specific definition" approach, here it is not appropriate to do so, for several reasons. First and foremost, the more specific definition

approach is inconsistent with a construction permitting the broadest possible use of land, here a defined use for which Applicant admittedly qualifies. *See Rabenold; Kissell.*

Second, the more specific definition approach is inconsistent with the compatibility of uses in the zones in question. The Board's approach here resulted in a use permitted by special exception in commercial zones but not in the Agricultural zone. Applicant's proposed use, however, is more consistent with other special exception uses in the Agricultural zone than with those in the commercial zones. The uses permitted by special exception in commercial zones contemplate more intense public use than those in the Agricultural zone. For example, motels, hotels, taverns, shopping centers and public buildings and facilities are permitted by special exception in a commercial zone. Section 305(C) of the Ordinance. In contrast, uses permitted in an agricultural zone include: bed and breakfasts, campgrounds, heliports, parks and day care facilities. Section 304(C) of the Ordinance. Applicant's proposed facility will not be open to the public; rather, it will be only used to clean Applicant's buses. The proposed use will harmonize with other uses permitted in the Agricultural Zone. Indeed, the Board did not find otherwise.

Our decision in *AWACS* does not compel a different result. In *AWACS,* a cellular company sought to construct a tower in a zoning district prohibiting "telephone central offices." The company argued its proposed use was more appropriately classified as a "public utility building." We disagreed, noting that "[t]he ordinance nowhere provides for a specific use of a 'public utility' or a 'public utility building'...." *AWACS,* 656 A.2d at 610. Instead, the term "public utility" as used in the ordinance represented a "generic type of activity rather than a specific property

use." *Id.* We concluded the proposed tower fell within the prohibited "telephone central office" classification.

Here, unlike in *AWACS,* the Ordinance does not define "public utility building or service structure." Also, in contrast to *AWACS,* the Ordinance permits a "public utility building or service structure" by special exception. So, the Board here chose between two defined uses; whereas the zoning hearing board in *AWACS* chose between a defined use and a general activity for which no use was assigned in any zoning district. The choices are not comparable. Accordingly, this case is not controlled by *AWACS.*

■ Also, in its denial, the Board failed to consider the general standards for evaluating a special exception request. Once an applicant meets its burden of persuading the board its proposed use satisfies the ordinance's objective criteria, it is presumed that the proposed use is consistent with the general welfare of the community. *Manor Healthcare.* The burden then shifts to objectors to rebut the presumption by proving that there is a high degree of probability the proposed use will adversely affect the welfare of the community in a way not normally expected from the type of use. *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.,* 739 A.2d 644 (Pa.Cmwlth.1999). Mere speculation as to possible harm is insufficient. *Id.*

Section 642 of the Ordinance sets forth the requisite criteria for a special exception as a "public utility building or service structure." The only requirement applicable here states:

> There shall be no specific minimum lot size; however, each lot shall provide front, side and rear setbacks which comply with the requirements of the zone in which located. Such uses shall be exempt from lot coverage and open area requirements of the zone in which locat-

ed provided that the stormwater management plan is approved by the township.

The Board does not dispute that Applicant's proposed use satisfies this requirement. Thus, the burden shifted to objectors to establish "by a high degree of probability" that the proposed facility would have an adverse impact. *Sunnyside Up Corp.*

The Board found that local residents currently experience traffic problems because of the nearby high school and its facilities. Board's Opinion, Finding of Fact No. 19. However, it did not find that Applicant's proposed facility would have any adverse impact on the community. In addition, the record contains little testimony that Applicant's proposed use would increase traffic. At best, the record contains little more than speculation on any potential harm.[2] Clearly, this falls far short of the "high probability standard" of specific detriment to the public welfare.

For the foregoing reasons, we reverse.

### *ORDER*

AND NOW, this 18th day of October, 2002, the order of the Court of Common Pleas of York County is reversed and this case is remanded to the Court of Common Pleas for further remand to the Zoning Hearing Board of Jackson Township with instructions that the Board apply the "public utility building or service structure" classification of Section 304(C)(18) of the Jackson Township Zoning Ordinance to the application. Jurisdiction relinquished.

---

**2.** In any event, an increase in traffic alone is insufficient to justify the refusal of an otherwise valid land use. *Manor Healthcare.*