**TINK–WIG MOUNTAIN LAKE FOREST PROPERTY OWNERS ASSOCIATION, Appellant**

v.

**LACKAWAXEN TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2009.

Decided Dec. 16, 2009.

---

Gregory D. Malaska, Stroudsburg, for appellant.

R. Anthony Waldron, Hawley, for appellee, Lackawaxen Township.

Thomas F. Farley, Hawley, for appellee, Steven Heinrich.

BEFORE: LEADBETTER, President Judge, and McCLOSKEY, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Tink–Wig Mountain Lake Forest Property Owners Association (the Association) appeals an order of the Court of Common Pleas of Pike County (trial court) denying its land use appeal from the Lackawaxen Township Zoning Hearing Board's (the Board's) issuance of a zoning permit for the construction of a wind turbine on the real property of one of its members. We now affirm.

Tink–Wig is a planned community of approximately 800 lots located in a wooded valley in northern Pike County, Pennsylvania. The Association is a non-profit organization who owns the common areas and roads within the planned community of Tink–Wig. The Association administers and maintains the common areas and roads through the imposition and collection of annual assessments.

Steven Heinrich and Eileen Carroll are the owners of a lot in the planned community. On April 23, 2008, they applied to Lackawaxen Township (the Township) for a zoning permit seeking to erect a fifty-five foot high Skystream wind turbine to generate electricity as an accessory use on their property, an area zoned as R–1. Subsequently, the Township Zoning Officer issued a zoning permit for the proposed wind turbine as an accessory use permitted by the Township Zoning Ordinance (the Ordinance).

On May 28, 2008, after learning about the granting of the zoning permit, the Association filed an appeal with the Board as an interested and affected neighboring property owner.[1] In its appeal, the Association challenged the legality of the granting of the zoning permit by the Township Zoning Officer. The Association asserted that the proposed use was a conditional use, and, thus, the Township Board of Supervisors (the Supervisors) was the proper entity to decide whether or not the zoning permit should be granted.

A hearing was held before the Board on July 17, 2008. At the hearing, Jeff Cammerino, Township Code Enforcement Offi-

---

1. Mr. Heinrich challenged the Association's standing to file such an appeal at the hearing before the Board; however, the Board over-ruled his objection as it found that the Association had standing as the owner of the road in front of Mr. Heinrich's property.

cer, James Dolan, Township Zoning Officer, Frank Ingulli, Executive Director of the Association, and Mr. Heinrich testified. Mr. Cammerino testified that it was his understanding that Section 501.2 of the Ordinance required that any structure proposed to be over sixty-feet in height was to be treated as a "conditional use," and because the proposed wind turbine was only fifty-five feet in height, it was therefore not considered to be a conditional use. (R.R. at 32a). Mr. Dolan testified that he issued the zoning permit because he concluded that the proposed use met the requirements for an accessory use and, thus, he acted properly in granting the zoning permit application. Mr. Heinrich testified that he applied for the zoning permit for an accessory use because he was interested in constructing the wind turbine in order to provide his private property with electricity.

In contrast, Mr. Ingulli testified that he did not believe that the proposed wind turbine was an accessory use and that it was not the same as a "gazebo," which had been considered an accessory use pursuant to the Ordinance. (R.R. at 83a). Mr. Ingulli testified that he had safety concerns about wind turbines and was also concerned that the provisions of the Ordinance did not "cover everything that's involved with wind turbines." (R.R. at 84a).

On August 26, 2008, the Board issued written findings of fact and conclusions of law and denied the Association's appeal. The Board noted that the first issue was whether the proposed wind turbine was an accessory use or a conditional use, as defined by the Ordinance. The Board noted that the zoning permit application listed the use as an accessory use and the Township Zoning Officer approved it as such. The Board noted that the proposed wind turbine was to be fifty-five feet in height (forty-nine feet in height plus an additional six feet for the blade extension), which was less than the sixty-foot conditional use height requirement in Section 501.2 of the Ordinance.

Further, the Board noted that although the Association argued that the wind turbine was "essentially different than other accessory uses," there was nothing in the Ordinance to "back up" that assertion. (R.R. at 295a). The Board recognized that a gazebo was not listed as an accessory use in the Ordinance, however, such an item was "routinely authorized as such under the general definitional scheme of the Ordinance." *Id.* Thus, the Board concluded that the proper analysis was to consider whether the proposed wind turbine met the requirements for an accessory use rather than a conditional use.

The Board noted that it was undisputed that the Ordinance did not list a wind turbine as one of the accessory uses permitted in an R–1 zone, but then indicated that the term "essential services" was listed as one of the specified accessory uses. Thus, the Board considered whether wind turbines were included in the definition of "essential services." The Board concluded that the proposed wind turbine was an "essential service" because it was for the private use of the property owner, was not a commercial venture and was to be used to provide electricity for the private property. Additionally, the Board noted that although it might become necessary for a township to specifically address the issue of wind turbines with particular ordinances in the future, at the present time the Township had no such specific provisions in its Ordinance. Therefore, the Board determined that the Township had acted properly on the information before it and the current Ordinance in issuing the zoning permit. The Board also noted that certain of the performance standards, i.e., setbacks for yards, buffers and noise lev-

els, had been reviewed prior to issuing the zoning permit, and, thus, the Board concluded that the permit had been properly issued. The Association then filed a notice of appeal with the trial court and Mr. Heinrich filed an entry of appearance as an intervenor.

Before the trial court, the Association alleged that the Board erred in determining that the proposed use was an accessory use by determining that it was customary and incidental to the residential area. The Association asserted that the Board also erred in finding that the wind turbine was an "essential service" by concluding that it was a "public utility," one of the enumerated "essential services" found in the Ordinance. Finally, the Association asserted that the Board erred in concluding that accessory uses were not required to comply with the Ordinance's performance standards.

On April 27, 2009, after the submission of briefs and oral argument, the trial court denied the Association's appeal. The trial court noted that the Township Zoning Officer and the Board had both concluded that the proposed use was an acceptable accessory use and, thus, concluded that the proposed wind turbine had been properly characterized as an accessory use. The trial court noted that the Board was "best suited" to interpret the meaning of the Township's Ordinance and to determine how the Ordinance was to be applied. (R.R. at 348a). The trial court noted that it was bound to give "deference" to the Board regarding the interpretation of its own zoning ordinance. (R.R. at 359a).

The trial court also noted that the Board was not required to turn to case law to determine what constituted an accessory use, but was "permitted to interpret its Ordinance as it best saw fit." (R.R. at 358a).

With regard to the Ordinance's definition of "essential services," the trial court noted that a review of the Ordinance indicated that the definition did not require that a public utility or a municipality erect the structure that would supply the essential service. The trial court noted that the Ordinance did not prohibit a private entity from supplying such service. Thus, the trial court concluded that the Board did not abuse its discretion in finding that the proposed wind turbine, which would be used to provide electricity to a private individual, met the definition of an "essential service."

Additionally, the trial court noted that the Township Zoning Officer had testified that "he checked the setback" requirement which was one of the listed performance standards in the Ordinance. (R.R. at 358a). The trial court concluded that, contrary to the Association's argument that the Board concluded that accessory uses were not required to comply with performance standards, the Board found that the "relevant performance standards were reviewed." (R.R. at 358a). The Association then filed an appeal with this Court.

On appeal,[2] the Association argues that the procedure followed by the Township was improper as the Ordinance required that public comment and approv-

---

**2.** On appeal, where the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Wolter v. Board of Supervisors of Tredyffrin Township,* 828 A.2d 1160 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 577 Pa. 683, 843 A.2d 1240

(2004). This Court may conclude that the governing body abused its discretion only if its findings of fact are not supported by substantial evidence. *Ruf v. Buckingham Township,* 765 A.2d 1166 (Pa.Cmwlth.2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

al should have been obtained prior to the issuance of the zoning permit. The Association argues that the trial court and the Board erred by concluding that a wind turbine that served a single private home was a "public utility facility" and, thus, an "essential service," a specifically delineated accessory use as defined in the Ordinance. The Association also argues that the trial court and the Board erred by concluding that the proposed wind turbine was an accessory use, that is, one that was customarily incidental to a primary use in an R–1 zoned residential area. Finally, the Association argues that the trial court and the Board erred in concluding that accessory uses are not required to comply with all of the relevant performance standards found in the Ordinance.

■ Initially, we note that the Association's argument that public approval was warranted prior to the approval of the zoning permit is without merit. Section 406 of the Ordinance provides that permits for principal permitted uses and accessory uses "shall be issued by the Zoning Officer," provided that such uses comply with the standards in the Ordinance. (R.R. at 163a). This Section further provides that conditional uses and special exception uses shall comply with additional review procedures and criteria, such as that provided by Section 406.1 of the Ordinance. Section 406.1 of the Ordinance specifically provides as follows:

> Whenever a proposed use is neither specifically permitted nor denied by this Ordinance, the Zoning Officer shall refer the application to the Board of Supervisors, who shall decide whether the use is permitted or denied in the district proposed, based upon the intent of the district and upon the similarity of the use to other uses listed in the Schedule of Uses. The Board of Supervisors shall, if it determines the use permitted, classify the proposed use as either a Principal Permitted, Conditional, Special Exception Use, establish such standards, conditions, and supplemental regulations as may be appropriate, and direct the Zoning Officer to proceed accordingly.

(R.R. at 163a).

Thus, although the Association correctly asserts that public comment and/or approval is necessary under the Ordinance, that requirement relates to conditional uses or special exceptions. In the present matter, Mr. Heinrich and Ms. Carroll applied for a zoning permit for an accessory use and the Township Zoning Officer concluded that the proposed wind turbine was an accessory use. Accordingly, public approval was not required by the Ordinance prior to the issuance of the zoning permit for an accessory use.

The Association argues that the Board and the trial court erred in finding that the proposed wind turbine was not itself a primary use, but rather that it accompanied a permitted primary use and was an accessory use. The Association notes that the Ordinance defines an "accessory use" as a use "customarily incidental to the principal use" and that the terms "customarily" and "incidental" are not further defined by the Ordinance. (Association's Brief at 25). Thus, the Association argues that the dictionary definitions of those terms should be used and that "customarily" is defined as "by custom, commonly practiced, used or observed" while "incidental" is defined as "occurring or likely to occur as a minor consequence or accompaniment." (Association's Brief at 26).[3] Further, the Association argues that be-

**3.** The Association cites a number of this Court's decisions for the proposition that dictionaries can be used to provide precise definitions of words that are undefined in zoning ordinances.

cause the testimony revealed that this was the first application that the Township had received for this type of proposed use, it could not be considered as customary. Additionally, the Association asserts that although an "exhaustive search of Pennsylvania case law" revealed no cases which dealt with residential wind turbines, it compared cases dealing with similar structures and discovered one Pennsylvania case, a 1963 trial court case in Philadelphia County, wherein the court found that a 301–foot radial tower was not an accessory use. (Association's Brief at 27). It also sets forth several cases from other jurisdictions as persuasive and argues that those jurisdictions have concluded that wind turbines are not accessory uses.

■ This Court has stated that the issue of whether a proposed use falls within a given category of permitted uses in a zoning ordinance is a question of law subject to our review. *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014 (Pa.Cmwlth.2002). However, it is noted that the ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land. *Id.* In addition, to define an undefined term, one may consult the definitions found in statutes, regulations or the dictionary for assistance. *Id.* Undefined terms are given their plain meaning and any doubt is resolved in favor of the landowner and the least restrictive use of the land. *Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 579 Pa. 694, 856 A.2d 835 (2004). In addition, the governing body is entitled to considerable deference in interpreting its own ordinance and such interpretation is accorded great weight. *Id.*

■ With regard to accessory uses, Article III of the Ordinance, defines an accessory use or structure as follows:

A use of land or of a building or portion thereof customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use.

(R.R. at 144a).

Customarily incidental is not further defined in the Ordinance. However, its definition is ascertainable and must be interpreted as imposing some reasonable limitation on what can be built on the land as an accessory use.

We note that a full and equitable hearing was conducted before the Board, that it recognized that accessory uses have long been permitted on residential properties and that permission for similar accessory uses, i.e., solar collector panels, propane tanks, satellite television dishes, television antennas, amateur (or "ham") radio towers and water storage facilities, has been granted by a zoning permit such as the one issued in the present matter. We agree with the Board that as some new uses, such as solar panels, outdoor fireplaces and wind turbines, take the place of other uses that were at one time in fashion, those uses become known as customarily incidental to the principal use. Moreover, we conclude that the Board correctly found that the proposed wind turbine was "subordinate to the principal use of the land" because it is was to be used for private residential use and, thus, was most similar to solar collector panels which were considered accessory, not principal uses. (Board's Brief at 5).

■ Next with regard to "essential services," the Association argues that the definition of essential services includes only such things as sewage treatment plants and traffic signals and which provide a benefit to the public or serve the public,

which is contrary to the use of the proposed wind turbine in the present matter. The Association argues that the proposed wind turbine does not meet the definition of a "public utility facility" because the plain meaning of the term "public utility facility" envisions a facility affecting the "public," and not just a single private home. (Association's Brief at 19).

In support of that proposition, the Association argues that the Public Utility Code, 66 Pa.C.S. § 102, defines a "public utility" as one that produces, generates, transmits, distributes or furnishes natural or artificial gas, electricity or steam for the production of light, heat or power *to or for the public for compensation.* (Association's Brief at 21) (emphasis in original). The Association notes that Black's Law Dictionary also defines a public utility as a "business or service which is engaged in regularly supplying the public with some commodity or service which is a public consequence and need, such as electricity, gas, water, transportation, or telephone or telegraph service." (Association's Brief at 21–22). Finally, the Association argues that this Court's ruling in *H.E. Rohrer, Inc.,* supports its assertion that the proposed wind turbine is not a public utility. The Association notes that in *H.E. Rohrer, Inc.,* this Court stated that a "public utility" is defined as follows:

> Where, as here, an ordinance permits the use for public utility purposes and provides no definition, that phase (sic) should be understood to mean 'any business activity regulated by a government agency in which the business is required by law to: (1) serve all members of the public upon reasonable request; (2) charge just and reasonable rates subject to review by regulatory bodies; (3) file tariffs specifying all of its charges; and

> (4) modify or discontinue its service only with the approval of the regulatory agency.' *Id.* (citing *Crown Communication[s] v. Zoning Hearing Board of the Borough of Glenfield,* 550 Pa. 206 [266], 274–75, 705 A.2d 427, 431–32 (1997)).

(Association's Brief at 22).

With respect to areas zoned as R–1, the subsection of Article IV of the Ordinance entitled "Schedule of Uses" provides that one of the listed "accessory uses" for such zoned areas is "essential services." (R.R. at 164a, 165a).[4] Further, Article III of the Ordinance, defines "essential services" as:

> Public utility facilities that do not require enclosure in a building, including the construction or maintenance, of gas, electrical, steam, telephone, sewage treatment plants and collection systems, or water distribution systems; including equipment such as poles, towers, wires, mains, drains, sewers, pipes, conduits, cables, fire alarm boxes, police call boxes, traffic signals, hydrants, and other similar equipment.

(R.R. at 146a).

Thus, while it appears that the definition of "essential services" does not specifically allow for such services to be provided by an individual, it does not prohibit such services either. The trial court deferred to the Board, as it determined it was required to do by law, because it concluded that the Board had not abused its discretion. Additionally, we note that the Township did not base its permit approval on the terms "public utility facility" and "essential services", as these terms were not used prior to the Association's appeal to the Board. The terms were first raised by counsel for Mr. Heinrich during the cross-examination of Mr. Cammerino, the Township Zoning Officer, who was asked if he

---

4. This section also lists such things as satellite dishes, carports, customary accessory uses and structures and signs in association with an approved use, as accessory uses.

would consider the proposed wind turbine as an "essential service" and, thus, as an accessory use pursuant to the Ordinance. (R.R. at 58a). In response, Mr. Cammerino replied that he did think that the proposed wind turbine met the Ordinance's definition of both an essential service and a public utility.

With regard to the final issue, the Association argues that Section 702.4 of the Ordinance requires that the Township Zoning Officer ensure compliance with all of the provisions of the Ordinance by providing as follows:

> No permit shall be issued until the Zoning Officer has certified that the proposed use, building, addition, or alteration, complies with all the provisions of this Ordinance as well as with all the provisions of other applicable regulations.

(R.R. at 267a).

■ Further, the Association argues that Section 514 of the Ordinance requires that all existing, proposed, new or expanded residential, commercial, manufacturing or other non-residential uses must comply with certain performance standards and that there was no testimony confirming the scope of the Township's Zoning Officer's investigation as to whether the proposed wind turbine met all of the performance standards. The Association asserts that the trial court erred when it concluded that it was not required to consider whether all of the performance standards had been met even though it acknowledged that Mr. Cammerino had sufficiently testified that he had considered one of the performance standards, the set back requirement, which he determined had been met. However, the Association argues that such testimony was insufficient to support the requirement that all standards were met prior to the issuance of the zoning permit.

Section 514 of the Ordinance provides that the intent of the Section is to regulate the operation of all developments in the Township and to protect the environment and public health, safety and general welfare. It requires that performance standards be met with respect to a comprehensive list of items, including: yards and buffers, operations and storage of materials, fire and explosive hazards, radioactivity, noise, vibration, lighting and glare, smoke, odors, other forms of air pollution, surface and groundwater protection, landscaping, building colors, stormwater management and soil erosion, waste materials and sewage disposal.

The Township Zoning Officer testified that the proposed use met the setback requirement. The Board noted that "other" performance standards would be addressed in the future. Thus, we disagree with the Association's argument that none of the performance standards listed in Section 514 of the Ordinance were met. We also note that, contrary to the Association's assertion, the trial court did not conclude that the performance standards did not have to be considered or met.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 16th day of December, 2009, the order of the Court of Common Pleas of Pike County is affirmed.