IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Lampeter Solar 1, LLC,    :
                              Appellant    :
    :
                v.    :    No. 76 C.D. 2025
    :    Argued:  December 8, 2025
West Lampeter Township Zoning    :
Hearing Board and West    :
Lampeter Township    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT           FILED:  January 15, 2026

West Lampeter Solar 1, LLC (Applicant) appeals an order of the Lancaster County Court of Common Pleas (trial court) that affirmed the decision of the West Lampeter Township Zoning Hearing Board (Zoning Board) to deny Applicant's request for a special exception.  Applicant seeks approval to construct an "agrivoltaics" solar farm, which will be used to generate electricity and to raise sheep.  Because an "agrivoltaics solar farm" is not a use addressed in the West Lampeter Township Zoning Ordinance (Zoning Ordinance),[1] Applicant sought a special exception, as appropriate where a proposed use is not expressly authorized in any zoning district.  Specifically, Applicant sought to locate its 25-acre solar facility in the Agricultural District where non-agricultural uses cannot exceed 5 acres in size.  Concluding that Applicant's project constituted a nonagricultural use, the Zoning Board denied Applicant a special exception because it did not satisfy the

---

[1] WEST LAMPETER TOWNSHIP, LANCASTER COUNTY, PENNSYLVANIA, ZONING ORDINANCE OF 2006 (July 10, 2006), *as amended* (ZONING ORDINANCE).

Zoning Ordinance's size limitation. Discerning no merit to Applicant's contention that an agrivoltaics solar farm is an agricultural use, we affirm the trial court.

## Background

On May 9, 2023, Applicant applied to the Zoning Board for a special exception to use a 55-acre farm located in the Agricultural District of West Lampeter Township for a community agrivoltaics solar farm. Reproduced Record at 9-10 (R.R. __).[2] Applicant intends to lease the farmland from Gerald B. and Jewel E. Garber. On August 8, 2023, the Zoning Board conducted a hearing on Applicant's special exception request.

Gerald B. Garber testified that his father purchased the land in the 1970s for use as a pasture and, later, to grow crops. The farm is enrolled in the Clean and Green program[3] and in the Conservation Reserve Enhancement Program.[4] In 2004, Garber purchased the farm from his father and has been using it for "crop farming since then." Notes of Testimony, 8/8/2023, at 12 (N.T. __); R.R. 515.

Garber explained that he would like to pass the farm onto his children but needs to have it generate income after he retires. After exploring several options, he decided that a community agrivoltaics solar farm would best suit his objectives.

---

[2] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by Applicant.

[3] The Clean and Green program, established by the Pennsylvania Farmland and Forest Land Assessment Act of 1974, Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§5490.1-5490.13, "provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes." *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 505 (Pa. Cmwlth. 1998).

[4] This program pays property owners annual rent to place land in conservation cover. *See* https://www.pa.gov/agencies/pgc/habitat-management/landowner-assistance/crep (last visited January 15, 2026). Garber testified that nothing is harvested from the portion of land enrolled in this program, but once a year, the grass is cut.

The solar farm will occupy 25 to 30 acres and be surrounded by a 7-foot-tall fence. Below the solar panels, a custom seed mix of clover and other grasses will be planted on which sheep can graze. The solar panels will provide electricity for the community and keep the sheep dry and shaded. Once the solar panels cease to be productive, they will be decommissioned; removed; and the land will become a "pasture again." N.T. 13; R.R. 516.

Tim Mills, Senior Project Developer for New Leaf Energy, which owns Applicant and develops solar energy throughout the country, testified. Because the proposed solar project is limited to five megawatts, there will be no connection to transmission lines or need for a substation. Rather, the proposed system uses a transformer that "steps up the voltage onto the distribution lines." N.T. 20; R.R. 523. PPL Electric Utilities' existing poles will be used to distribute electricity generated on the Garber farm.

Mills explained that the solar panels are made of silicone glass and can be recycled at the end of their 25-year expected lifetime. A tracker system will be installed to allow the panels to face east in the morning, lay flat during the middle of the day, and face the west at the end of the day. Because the panels are bifacial, they can also collect sunlight that "reflects off the ground." N.T. 22; R.R. 525. Sheep will graze on the site of the solar project to control the vegetation. Small fans will be installed to reduce heat, but outside the fenced-in area, the decibel level is "very, very minimal." N.T. 23; R.R. 526.

Mills testified that New Leaf hired an engineering firm to do an environmental field study, which concluded that no streams or wetlands will be impacted by the proposed project. The study investigated endangered species, including a bald eagle nesting site, and it found no concerns. New Leaf also met

with the local fire department. The panels will be separated sufficiently to allow larger vehicles to move between the solar panels.

Dotterer Farms, LLC has partnered with New Leaf on numerous other solar sites. Its principal, Daniel Dotterer, testified that he intends to enter into a lease with the Garbers to use their land for sheep grazing. Dotterer explained that goats cannot be used to graze under solar panels because they climb, are curious, and chew. Cattle have the potential to break panels. Although a well will be dug to provide water for the sheep, Dotterer acknowledged that in a dry year, he may not be able to keep sheep on the solar farm. Dotterer does rotational grazing, which he explained as breaking up the site in about "[10] different paddings, and every [4] days we remove the sheep." N.T. 37-38; R.R. 540-41.

Dotterer testified that he intends to graze at least 160 Katahdin sheep on the farm from April through November. Dotterer has developed a "foraged production seed mix" for the grasses planted under the solar panels that will put nitrogen back into the soil. N.T. 26, 42; R.R. 529, 545.

Michelle Neckermann, West Lampeter Township's Zoning Officer, testified. She explained that the Zoning Ordinance does not define "solar," "solar farms," or "agrivoltaics." N.T. 106; R.R. 609. The Zoning Ordinance limits nonagricultural uses to five acres in an agricultural district. ZONING ORDINANCE §285.35.B(3). The dictionary defines agriculture as "[t]he science, art, or practice of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation and marketing of the resulting products cleared . . . the land to use for agriculture." N.T. 91; R.R. 594. Neckermann opined that Applicant's proposed use does not meet the definition of agriculture. She observed, in support, that the Pennsylvania Department of Agriculture has issued a publication advising that a

4

commercial solar farm "does not meet the definition of normal farming activities under the Right to Farm Act[.]"[5]  N.T. 92; R.R. 595.  Additionally, the Pennsylvania Department of Agriculture advises that land with quality soils should not be used to site solar panels.

Dennis Grim, who resides at 1035 Eshelman Mill Road, owns three farms subject to "easement preserves by Lancaster Farmland Trust[.]," adjacent to the Garber Farm.  N.T. 116; R.R. 619.  He serves as board member and chair of the Lancaster Farmland Trust and opposes the special exception application.  Grim testified that it is important to protect agricultural-zoned farms from becoming solar factories and opined that "sheep grazing on the land under panels is a guise to cover up the factory aspect of electric generation."  N.T. 118; R.R. 621.  "Open spaces and scenic views are part of [the] Lancaster County life."  N.T. 117; R.R. 620.  Grim noted that most of the Garber farm contains class two and class three soils, which are "the most productive cropland, non-irrigated, in the world," and is surrounded on both sides by Lancaster Farmland Trust farms.  N.T. 118; R.R. 621.

Daryl Keener owns a neighboring farm that he uses to raise livestock. He opined that Applicant's proposed solar farm is less intrusive than a hog or chicken farm.  Further, the land can be returned to crop farming or other agricultural use.

### Zoning Board Decision

Following a hearing, the Zoning Board made 13 findings of fact. Relevant here, the Zoning Board found as follows:

> 11.    Specifically, Applicant proposes a ground mounted solar array with sheep grazing between and beneath the solar panels.
>
> 12.    Applicant's witnesses testified that the sheep grazing part of the use will occupy the Property under a lease not yet

---

[5] Act of June 10, 1982, P.L. 454, 3 P.S. §§951-958, commonly known as the Right to Farm Act.

concluded between the Applicant and the tenant farmer, and is intended to be part of the maintenance of the site, providing for control of the height of the vegetative ground cover.

Zoning Board Decision at 2, Findings of Fact Nos. 11-12. The Zoning Board then turned to the question of whether the Applicant's project qualified for a special exception.

Noting that "agrivoltaics" is not defined in the Zoning Ordinance, the Zoning Board relied on definitions from several governmental sources that establish its meaning as "the use of land for both agriculture and solar photovoltaic energy generation." Zoning Board Decision at 4, Conclusion of Law No. 5. Because the Zoning Ordinance does not define "agriculture," the Zoning Board used the dictionary definition, *i.e.*, "[t]he science, art, or practice of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation and marketing of the resulting products[.]" Zoning Board Decision at 4, Conclusion of Law No. 7 (citation omitted). Based on these definitions and Applicant's evidence, the Zoning Board found that Applicant sought to use the Garber farm for the principal use of a mounted solar array with the accessory use of grazing sheep beneath and between the solar panels.

The Zoning Board concluded that Applicant's proposed use is not one of agricultural, horticultural or forestry related uses that are listed in the Zoning Ordinance. *See* ZONING ORDINANCE §285-26; R.R. 290-93 (table of allowed uses in each zoning district). The Zoning Ordinance allows a landowner to seek a special exception where it seeks to engage in a use not addressed in the Zoning Ordinance, but the applicant must show that its proposed use will comply with all applicable requirements of the Zoning Ordinance. ZONING ORDINANCE §285-16.C; R.R. 254. Notably, the Zoning Ordinance provides that "in no case shall any nonagricultural

6

use contain more than five acres." Zoning Ordinance §285-35.B(3); R.R. 359. Because Applicant's proposed solar farm will occupy approximately 25 acres, it did not satisfy Section 285-35.B(3). Accordingly, the Zoning Board denied the application.

Applicant appealed the Zoning Board's decision to the trial court.

**Trial Court Decision**

Without taking additional evidence, the trial court affirmed the Zoning Board's decision. The trial court explained that the Township's Agricultural District was established

> [t]o promote the continuation and preservation of agricultural activities in those areas most suitable for such activities. This zone also intends to protect and stabilize the Township's viable agricultural economy by eliminating uses that are incompatible with farming but permitting limited agricultural support businesses. . . . Additionally large-scale and obtrusive uses are permitted by conditional use, to separate them from the Township's population concentrations. Finally, it is the intent of this zone to limit the total number of subdivisions and the maximum lot sizes of nonagricultural uses so as to avoid [reducing] the productivity of the Township's agricultural economy.

Trial Court Op. at 6 (quoting Zoning Ordinance §285-21.D(1)). Accepting the Zoning Board's plain meaning of the term "agricultural," the trial court concluded that photovoltaic generation of electric power, by itself, is not agriculture. This conclusion was consistent with the evidence. Garber testified that the Clean and Green program did not consider solar power generation to be an agricultural use.[6]

---

[6] At the hearing, Garber testified as follows:
    [Q]:    Is that enrolled in Clean and Green now?
    [A]:    Yes. It has been in Clean and Green I think ever since we have owned it.
    [Q]:    So it will be ruled out?

7

Further, the Pennsylvania Department of Agriculture discourages the placement of solar generating facilities on agricultural land, especially where that land contains certain types of soil, *i.e.*, class one through class four. The Garber farm contains class two and three soils.

The trial court acknowledged that sheep grazing was agricultural. However, the generation of electricity is a nonagricultural use and, as such, limited to five acres in the Agricultural District. ZONING ORDINANCE §285-35.B(3); R.R. 359.

The Zoning Ordinance defines a principal use as "[a] dominant use(s) or main use on a lot, as opposed to an accessory use," and an accessory use as "[a] use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use." ZONING ORDINANCE §285-20; R.R. 257, 273. The Zoning Board held that the generation of electricity would be Applicant's principal use, and sheep grazing would be the accessory use. The trial court rejected Applicant's argument that the holding in *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014 (Pa. Cmwlth. 2002) *(H.E. Rohrer, Inc.)*, supported the conclusion that its proposed dual use was authorized under the Zoning Ordinance.

The trial court found *H.E. Rohrer, Inc.*, 808 A.2d 1014, distinguishable. It involved a bus company's request for a special exception to build "a public utility building with service structure bus terminal facility[]" on property zoned agricultural. *Id.* at 1016. However, "public utility building or service structure" was a use expressly permitted in an agricultural zoning district. *Id.* at 1017. By contrast,

---

[A]: Yes.
N.T. 13-14; R.R. 516-17.

here, the dominant feature of the proposed use – a photovoltaic power generating facility – does not qualify as a permissible use in the Agricultural District where a nonagricultural use cannot exceed five acres.

The trial court concluded that the Applicant's project would undermine the Township's effort "to protect and stabilize the Township's viable agricultural economy by eliminating uses that are incompatible with farming but permitting limited agricultural support businesses." Trial Court Op. at 10. Thus, it denied Applicant's appeal of the Zoning Board's denial of a special exception.

Applicant appealed the trial court's decision.

**Appeal**

On appeal,[7] Applicant raises four issues:

1. Did the trial court err when it failed to consider agrivoltaics as a form of agriculture?

2. Did the trial court err by finding that agrivoltaics was not a form of agriculture and prohibited under Section 285-35.B(3) of the Zoning Ordinance?

3. Did the trial court err by finding that the principal use of the subject property was photovoltaic solar energy generation and not a dual use of both agriculture and photovoltaic solar energy generation because the project is an agrivoltaics project?

4. Did the trial court err by failing to follow binding Pennsylvania case authority which dictates that undefined terms in a zoning ordinance must be given their plain ordinary meaning

---

[7] Where, as here, the trial court does not take any additional evidence, our review of the Zoning Board's decision is limited to determining whether the Zoning Board abused its discretion or committed an error of law. *H.E. Rohrer, Inc.*, 808 A.2d at 1016 n.1. A zoning board abuses its discretion when its findings of fact are not supported by substantial evidence. *Rickert v. Latimore Township*, 960 A.2d 912, 918 n.9 (Pa. Cmwlth. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

and should be construed in favor of a landowner to permit the least restrictive use of the land?

Applicant Brief at 8-9. For purposes of this opinion, we combine Applicant's first and fourth issues.

## Applicable Principles

"[Z]oning ordinances are to be liberally construed to allow the broadest possible use of land," *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014) (quotation omitted), or, in other words, "to give the landowner the benefit of the least restrictive use[.]" *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015). "The permissive widest use of the land is the rule and not the exception, unless a use is specifically restrained in a valid and reasonable exercise of police power." *Southdown, Inc. v. Jackson Township Zoning Hearing Board*, 809 A.2d 1059, 1065-66 (Pa. Cmwlth. 2002).

"The rules of statutory construction apply to ordinances as well as statutes." *In re Holtz*, 8 A.3d 374, 378 (Pa. Cmwlth. 2010). The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review. *Northampton Area School District v. Zoning Hearing Board of Township of Lehigh*, 64 A.3d 1152, 1157 (Pa. Cmwlth. 2013). The primary objective of statutory interpretation is to determine the intent of the legislature. Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921. A statute's plain language generally provides the best indication of legislative intent, and, thus, statutory construction begins with examination of the text itself. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 175 (Pa. Cmwlth. 2007).

With respect to zoning ordinances, "[u]ndefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). A zoning ordinance is ambiguous where a provision is susceptible to more than one reasonable interpretation, *Adams Outdoor Advertising, L.P. v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006), or when the language is "vague, uncertain, or indefinite." *Barasch v. Pennsylvania Public Utility Commission*, 532 A.2d 325, 332 (Pa. 1987).

Finally, it is well settled that "a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. . . . Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance." *Risker v. Smith Township Zoning Hearing Board*, 886 A.2d 727, 731 (Pa. Cmwlth. 2005) (internal citation omitted).

## Analysis

### I. Whether "Agrivoltaics" is Agriculture

In its first issue, Applicant argues that the Zoning Board erred in holding that agrivoltaics is not agriculture. Rather, agrivoltaics involves a dual use of land for both agriculture and electricity generation. The Township responds that agriculture is "[t]he science, art, or practice of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation and marketing of the resulting products," which does not include solar energy production. Township Brief at 12. The Pennsylvania Department of Agriculture specifically advises that a "commercial scale solar" or "solar farm" does not meet the definition of normal

11

agricultural operation[8] under the Right to Farm Act, *id*. at 13, and therefore, it will not receive protection from local ordinances, otherwise given to agricultural operations.

The Zoning Ordinance states that the Agricultural District is intended "[t]o promote the continuation and preservation of agricultural activities in those areas most suitable for such activities." ZONING ORDINANCE §285-21.D(1); R.R. 282. "[T]he *development of nonagricultural uses and structures on existing farms shall be limited*." ZONING ORDINANCE §285-35.A(1); R.R. 355 (emphasis added). Where a term is not defined, the Zoning Ordinance instructs:

> If a word or term is not defined by this chapter, but is defined in the Subdivision and Land Development Ordinance (SALDO),[9] then the SALDO definition shall apply. *If a word or term is not defined in this chapter nor the SALDO, then the word or term*

---

[8] "Normal agricultural operation" means:

> The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry, livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:
>
> > (1) not less than ten contiguous acres in area; or
> >
> > (2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.
>
> The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry. Use of equipment shall include machinery designed and used for agricultural operations, including, but not limited to, crop dryers, feed grinders, saw mills, hammer mills, refrigeration equipment, bins and related equipment used to store or prepare crops for marketing and those items of agricultural equipment and machinery defined by the act of December 12, 1994 (P.L. 944, No. 134), known as the Farm Safety and Occupational Health Act. Custom work shall be considered a normal farming practice.

Section 2 of the Right to Farm Act, 3 P.S. §952.

[9] WEST LAMPETER TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE (February 6, 1984), Chapter 240 of the Code of the Township of West Lampeter, *as amended*.

*shall have its plain and ordinary meaning within the context of the section.* In such case, in case of a dispute, a standard reference dictionary shall be consulted.

ZONING ORDINANCE §285-19.F; R.R. 256. The SALDO does not define "agrivoltaics," "agriculture," or "agricultural activities."[10] The Zoning Board employed the dictionary to establish the plain meaning of "agriculture" within the context of "promoting the continuation and preservation of agricultural activities." ZONING ORDINANCE §285-21.D(1); R.R. 282.[11] This is consistent with Pennsylvania's Agricultural Development Act,[12] which defines "agricultural activity" or "farming" as "[t]he commercial production of agricultural crops, livestock or livestock products, poultry products, milk or dairy products, or fruits and other horticultural products." 3 P.S. §1302.

Agrivoltaics is the installation of solar panels for the generation of electricity and the conduct of an agricultural operation underneath the solar panels. Notably, the energy generated by the solar panels will not be used to prepare and market any crop or livestock products.

---

[10] The SALDO, however, does define the term "agricultural purposes." Agricultural purposes is:

> The use of land for farming, dairying, pasturage, beekeeping, horticulture, viticulture, or animal or poultry husbandry including the necessary accessory uses for packing, treating or storing the produce and equipment or housing and feeding the animals and/or the use of dwellings for families headed by a full-time farm worker. Includes land devoted to and meeting the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the federal government.

SALDO, §240-7. Available at: https://ecode360.com/11693722#11693730 (last visited December 23, 2025).

[11] Black's Law Dictionary defines agriculture as "[t]he science or art of cultivating soil, harvesting crops, and raising livestock." BLACK'S LAW DICTIONARY 76 (8th ed. 1999)

[12] Act of July 2, 1984, P.L. 537, 3 P.S. §§1301-1315.

13

Applicant argues that because the terms "agriculture" and "agricultural" operation" are not defined in the Zoning Ordinance, "there is no limitation on what can be considered 'agriculture' or an 'agricultural operation.'" Applicant Brief at 22. Applicant directs this Court to the Pennsylvania Municipalities Planning Code (MPC),[13] which defines an "agricultural operation" as

> an enterprise that is actively engaged in the commercial production and preparation for market of crops, livestock and livestock products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities. *The term includes an enterprise that implements changes in production practices and procedures* or types of crops, livestock, livestock products or commodities produced consistent with practices and procedures that are normally engaged by farmers *or are consistent with technological development within the agricultural industry*.

Section 107 of the MPC, 53 P.S. §10107 (emphasis added). Applicant argues that agrivoltaics is a "technological development within the agricultural industry." Applicant Brief at 25. We disagree.

First, we reject Applicant's argument that terms undefined in the Zoning Ordinance must be given their broadest construction. Rather, undefined terms are to be given their "plain and ordinary meaning." ZONING ORDINANCE §285-19F; R.R. 256. Second, the phrase "technological development within the agricultural industry" must be read in context. The production of crops, livestock, or commodities is a necessary part of the MPC's definition of "agricultural operations" as "an enterprise that is actively engaged in the commercial production and preparation for market of crops . . . and in the production, harvesting and preparation for market or use of . . . crops or commodities." Section 107 of the MPC, 53 P.S.

---

[13] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

§10107. Stated otherwise, there must be a connection between the technological advance and the preparation of agricultural products. Here, Applicant's generation of electricity will not advance the sheep grazing enterprise of Dotterer. Each use can be undertaken separately from the other.

The Zoning Board's conclusion that "agrivoltaics" does not constitute an agricultural use is unassailable. The trial court did not err in affirming its conclusion.

## II. Whether Agrivoltaics is Prohibited by the Zoning Ordinance

In its next issue, Applicant argues that the trial court erred in holding that its agrivoltaics project is prohibited under the Zoning Ordinance, which limits "any nonagricultural use" to five acres. ZONING ORDINANCE §285-35.B(3); R.R. 359. Applicant explains that its project will combine agriculture and photovoltaic solar energy generation as a dual and symbiotic use. Simply, "the sheep need space for grazing and nutrition and the vegetation around the solar panels needs to be maintained for proper operation." Applicant Brief at 18. Applicant argues that as a dual use project, "it would be a violation of any approval if [Applicant] discontinued the use of either sheep grazing or photovoltaic solar energy generation" on the land it intends to lease. *Id.*

The Township responds that a solar farm is not a use listed in the table of uses allowed in the Agricultural District. *See* ZONING ORDINANCE §285-26.B; R.R. 286-94 (permitting single-family dwellings, plant nurseries, tree farms, and publicly owned recreation parks). Special exceptions require the applicant to establish "by credible evidence" that the application complies with all applicable requirements of the Zoning Ordinance. Township Brief at 23 (quoting ZONING

15

ORDINANCE §285-16; R.R. 253-54).  The Township argues that Applicant did not make this showing.

The parties agree that the Zoning Ordinance does not regulate agrivoltaics.  For uses not specifically regulated, the Zoning Ordinance provides:

> Uses not specifically regulated.  If a use clearly is not listed as permitted by right, as a conditional use, or as a special exception use by this chapter within any zoning district, the use is prohibited, except that *the Zoning [] Board may permit such use as a special exception if the applicant specifically proves to the clear satisfaction of the Zoning [] Board that all of the following conditions would be met*:
>
> (1)     The proposed use would be no more intensive with respect to external impacts and nuisances than uses that are permitted in the district;
>
> (2)     The proposed use would be closely similar in impacts and character to uses permitted within the district, considering the standards in §285-67F;
>
> (3)     The use would meet the standards that would apply under §285-17 to a conditional use; and
>
> (4)     The use is not specifically prohibited in that district.
>
> (5)     The proposed use is a single discrete use and not a combination of uses allowed individually within this chapter.

ZONING ORDINANCE §285-5.B; R.R. 246 (emphasis added).   Further, when reviewing an application for a special exception, the Zoning Board considers the following standards:

> (1) Compliance with this chapter.  *The applicant shall establish by credible evidence that the application complies with all applicable requirements of this chapter*.  The applicant shall provide the Board with sufficient plans, studies or other data to demonstrate this compliance.
>
> (2) Compliance with other laws.   The approval may be conditioned upon proof of compliance with other specific applicable Township, state and federal laws, regulations and

16

permits. Required permits or other proof of compliance may be required to be presented to the Township prior to the issuance of any zoning permit, building permit, certification of occupancy and/or recording of an approved plan.

(3) Traffic. The applicant shall establish that the traffic from the proposed use will be accommodated in a safe and efficient manner that will minimize hazards and congestion, after considering any improvements proposed to be made by the applicant as a condition on approval.

(4) Site planning. The application shall include proper site layout, internal circulation, parking, buffering, and all other elements of proper design as specified in this chapter.

(5) Neighborhood. The proposed use shall not substantially harm any surrounding residential neighborhood, after considering any proposed conditions upon approval.

(6) Safety. The proposed use shall not create a significant hazard to the public health and safety, such as fire, toxic or explosive hazards.

(7) Natural features and agriculture. The proposed use shall be suitable for the site, considering the impacts upon steep slopes, mature woodland, wetlands, floodplains, springs and other important natural features. The proposed use shall be designed to minimize conflicts with agricultural activities.

ZONING ORDINANCE §285-16.C; R.R. 253-54 (emphasis added). The "applicable requirements of this chapter" provide as follows:

Other allowed uses. Unless otherwise specified, all other principal uses shall contain at least one acre. Except as specifically stated, *in no case shall any nonagricultural use contain more than five acres*.

ZONING ORDINANCE §285-35.B(3); R.R. 359 (emphasis added). Applicant seeks to install photovoltaic panels on 25 to 30 acres of land.

Photovoltaic energy generation is a "nonagricultural use" and cannot exceed five acres. Applicant's 25-acre solar farm exceeds this limit. We discern no

17

error in the trial court's conclusion that the proposed use did not comply with "all the applicable requirements" of the Zoning Ordinance, as required for a special exception. *See* ZONING ORDINANCE §285-16.C(1); R.R. 254.

### III. Whether Agrivoltaics Constitutes a Dual Use Permitted by the Zoning Ordinance

Finally, Applicant argues that in concluding that the photovoltaic solar energy generation would be the principal use and the sheep grazing would be the accessory use, the Zoning Board erred. Applicant contends that "[w]here a proposed use falls within two classifications, a zoning hearing board should opt for a classification that permits the broadest use of the land." Applicant Brief at 19. It argues that the Zoning Ordinance does not prohibit a dual use of the Garber farm and authorizes more than one principal use on a single parcel.

The Township responds that Applicant offers no authority to support its argument that the Zoning Board had to treat two separate, albeit mutually beneficial, uses as a distinct combined use. The Township argues that to interpret the proposed project as wholly agricultural, simply because it has an agricultural component, would "lead to an absurd result[.]" Township Brief at 21.

A "principal use" is "[a] dominant use(s) or main use on a lot, as opposed to an accessory use." ZONING ORDINANCE §285-20; R.R. 273. An "accessory use" is "[a] use *customarily incidental and subordinate* to the principal use or building and located on the same lot with such principal use." *Id*.; R.R. 257 (emphasis added).

Here, Applicant proposes to use the installed solar panels on the Property for 12 months a year. The sheep will be on the Property from April through November. During periods of drought, the sheep may have to be completely removed. The sheep are not necessary to the solar farm because the underlying

18

vegetation can be controlled with a lawn mower. The record fully supports the Zoning Board's conclusion that Applicant's principal, or "dominant," use will be the 25- to 30-acre solar farm, and the sheep grazing enterprise will be "subordinate" or "incidental" to the solar farm, ZONING ORDINANCE §285-20; R.R. 273. We discern no error in this conclusion.

We agree with the trial court that Applicant's reliance on *H.E. Rohrer, Inc.*, 808 A.2d at 1016, is misplaced. There, a bus company requested a special exception to build a "public utility building with service structure bus terminal facility" on property zoned as agricultural. *Id*. The proposed building included a wash bay for buses, office and storage space, and a parking area, but no mechanical services or passenger terminal. The zoning board denied the request for the stated reason that the proposed use was not a "regulated public utility," but more akin to an "automobile garage," which was not permitted in the agricultural district. This Court reversed, explaining that the zoning ordinance permits a "*public utility building or service structure*" by special exception and did not define the phrase. *Id*. at 1017 (emphasis added). The case was remanded with instructions to apply the "public utility building or service structure" classification to the special exception application. *Id*.

Unlike *H.E. Rohrer, Inc.*, Applicant's proposed "agrivoltaics" solar farm does not meet the definition of "agriculture," the use expressly permitted in the Agricultural District. Here, the Zoning Ordinance does not authorize solar photovoltaic energy generation in the Agricultural District beyond a 5-acre facility. The Zoning Ordinance was intended "to limit the development of agricultural tracts," and to "limit the number of single-family dwellings or other principal uses

19

which may be established on any tract" within the Agricultural District. ZONING ORDINANCE §285-35.A(3); R.R. 356.

The Zoning Board did not err in holding that Applicant's solar farm would constitute the principal use, and the sheep grazing enterprise would constitute the accessory use.

## Conclusion

We hold that agrivoltaics is not an agricultural use, and Applicant did not establish that its proposed use complied with the applicable requirements of the Zoning Ordinance for a nonagricultural use. The Zoning Ordinance authorizes more than one use of land: one must be principal and the other accessory. Applicant's principal use will be the production of electricity, not sheep-grazing. In any case, in the Agricultural District, a nonagricultural use, whether principal or accessory, cannot exceed five acres. Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Lampeter Solar 1, LLC,     :
                  Appellant     :
    :
         v.     :    No. 76 C.D. 2025
    :
West Lampeter Township Zoning     :
Hearing Board and West     :
Lampeter Township     :

# **O R D E R**

AND NOW, this 15th day of January, 2026, the order of the Court of Common Pleas of Lancaster County, dated December 18, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita